9 March 2000

No. 2--99--0699

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

MED+PLUS NECK AND BACK PAIN ) Appeal from the Circuit Court

CENTER, S.C., ) of Winnebago County.

)

    Plaintiff-Appellant and ) No. 96--LM--392

Cross-Appellee, )

)

v. ) 

)

DANIEL NOFFSINGER, )

) Honorable 

Defendant-Appellee and ) Ronald L. Pirrello,

Cross-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Med+Plus Neck & Back Pain Center, S.C., appeals from the judgment of the circuit court of Winnebago County finding that, while defendant, Daniel Noffsinger, breached his employment contract with plaintiff, plaintiff failed to sufficiently prove the existence of damages.  The trial court also originally ordered that, pursuant to the terms of the employment contract, plaintiff was entitled to attorney fees but, upon defendant's motion to reconsider, awarded attorney fees to neither party.  Plaintiff appeals and defendant cross-appeals the trial court's determination on the issue of attorney fees.  We affirm.

On February 23, 1995, plaintiff and defendant entered into an employment agreement.  The agreement provided that, for a two-year period, plaintiff would employ defendant and compensate him, for the first three months of the term, at the greater of $3,000 per month or 10% of defendant's gross billings for chiropractic services; thereafter, defendant would receive 10% of his gross billings in compensation.  The agreement further contained a liquidated damages provision which stated:

"
EARLY TERMINATION.
  The parties hereto agree that, in the event that [defendant] terminates this Agreement prior to the completion of the Subsequent Term, [plaintiff] shall be entitled to receive from [defendant] an amount which compensates [plaintiff] for the cost of training.  Upon the execution of this Agreement, [defendant] shall execute and deliver to [plaintiff] a promissory note *** in the principal amount of Fifty Thousand Dollars ($50,000).  The Note shall provide that the principal amount of Fifty Thousand Dollars ($50,000) will be reduced by Two Thousand and [
sic
] Eighty-

Three Dollars and thirty-three cents ($2,083.33) per month for each of the twenty-four (24) months of the Subsequent Term of this Agreement during which [defendant] continues to perform services for [plaintiff] under this Agreement.  If this Agreement is terminated for any reason by [defendant] or [plaintiff] for cause, pursuant to section 12, hereof, the remaining outstanding balance of the Note shall become immediately due and payable.  In the event that [defendant] terminates his employment with [plaintiff] after the completion of the subsequent Term, the Note shall be forgiven by [plaintiff], and the original of the Note shall be stamped 'Satisfied' and returned to [defendant]."

Additionally, the employment agreement provided that, in case of a dispute, "the prevailing party shall be reimbursed for all reasonable expenses incurred in resolving such dispute, including reasonable attorneys' fees."

On December 18, 1995, defendant resigned from plaintiff's employment.  Thereafter, plaintiff filed suit against defendant alleging breach of contract and seeking to enforce the liquidated- damages provision of the employment agreement as well as seeking lost profits and training costs associated with defendant's departure.  Plaintiff also sought attorney fees pursuant to the employment agreement.

The case proceeded to bench trial.  Dr. David Girgenti testified that he was president and clinic director of plaintiff.  He testified that the liquidated-damages clause was included to attempt to recapture the costs of training a new associate chiropractor.  Girgenti testified that defendant's ability to properly complete the necessary paperwork was so lacking that he had to spend three hours a day training defendant for the first two months of defendant's employment.

Sally Johnson testified that she was the clinic administrator.  She testified that Girgenti spent four hours a day training defendant for the first two or three months of defendant's employment.  Johnson also testified that she tracked expenses by chiropractor and estimated that plaintiff suffered over $90,000 in lost profits as a result of defendant's departure.

Dr. James Morgano and Dr. Andrew Kong testified that they were both associate chiropractors employed by plaintiff at the same time as defendant.  Each testified that he observed Girgenti giving defendant very little training during the first two months of defendant's employment.  Defendant testified that he received virtually no training from Girgenti.  Defendant also testified that he began treating patients as soon as he was hired and was hired because he had experience in the management of a chiropractic clinic and the proper manner in which to complete the necessary paperwork.

The trial court determined that defendant breached the employment agreement.  Additionally, the trial court ruled that plaintiff failed to adequately prove the existence of damages and that the liquidated-damages provision was unenforceable as a penalty.  The trial court also awarded plaintiff attorney fees.  Following defendant's motion to reconsider, the trial court vacated the award of attorney fees and ordered each party to pay its own attorney fees.  Plaintiff timely appeals and defendant timely cross-appeals.

Plaintiff initially contends that the trial court erred by refusing to award it damages for lost profits following defendant's resignation.  Plaintiff argues that the trial court erred as a matter of law in finding that lost profits were "disfavored under Illinois law."

Preliminarily, we note that a reviewing court will not disturb the damages assessed by a trial court sitting without a jury unless its judgment was against the manifest weight of the evidence.  
Royal's Reconditioning Corp. v. Royal
, 293 Ill. App. 3d 1019, 1022 (1997).  A trial court's assessment of damages is against the manifest weight when it ignored the evidence or used the wrong measure of damages.  
Royal's Reconditioning
, 293 Ill. App. 3d at 1022.

Here, the trial court correctly held that, in this case, lost profits were "disallowed," thus determining that lost profits would not be a component of the damages award in this case.  The trial court reasoned that lost profits were "disfavored under Illinois law," while failing to recognize that there was no "Illinois law" espousing such a holding.  Nevertheless, for the reasons that follow, we sustain the trial court's judgment because it has long been held that a trial court's judgment may be sustained upon any ground appearing in the record, as it is the judgment of the trial court, not the reasoning, which is on appeal to this court.  
Material Service Corp. v. Department of Revenue
, 98 Ill. 2d 382, 387 (1983).

In any breach of contract case, the proper measure of damages is the amount that will place the nonbreaching party in as satisfactory a position as it would have been had the contract been fully performed.  
Royal's Reconditioning
, 293 Ill. App. 3d at 1022.  The issue here is whether lost profits are recoverable in damages by a nonbreaching employer against the breaching employee.  Surprisingly, neither the parties' nor our own research has uncovered any Illinois case that speaks directly to this issue.  In this situation, where the nonbreaching employer is seeking damages against an employee for breaching an employment contract, the general rule is this:

"The measure of recovery is generally the extra cost of obtaining other services equivalent to those promised under the contract but not performed by the employee.  However, in some cases this will not amount to full compensation to the employer, and additional recovery has been allowed.  These additional damages must be foreseeable at the time the parties entered into the employment contract.  Recovery may be had for the cost of training a replacement, for instance, but damages will not be awarded for lost income if there is no proof that the former employee caused any substantial portion of the loss.

The employer's damages will be diminished by any amount which could have been avoided under the doctrine of avoidable consequences."  22 Am. Jur. 2d 
Damages
 §121 (1988).

In general, therefore, an employer may not collect lost profits from a breaching employee.

Plaintiff's arguments that lost profits are the preferred measure of damages in breach of employment contract cases are unpersuasive.  Plaintiff first cites to 
Royal's Reconditioning
 for the proposition that lost profits are generally available in a breach of employment contract situation.  
Royal's Reconditioning
 is distinguishable for two reasons.  First, the appellate court was not deciding whether lost profits were an appropriate element of damages; rather, the court decided that damages were limited to the amount that would have been earned during the contractual termination period.  
Royal's Reconditioning
, 293 Ill. App. 3d at 1024.  Second, when the employee breached his contract, he also took with him plaintiff's customers, representing 50% of the employer's gross revenue.  
Royal's Reconditioning
, 293 Ill. App. 3d at 1022.  Here, by contrast, when defendant departed, he did not take any of plaintiff's patients away; defendant merely relocated to another state and started his own, noncompeting practice.

Also distinguishable is 
Gerson Electric Construction Co. v. Honeywell, Inc.
, 117 Ill. App. 3d 309 (1983).  
Gerson
 arose following the dismissal of a general contractor's complaint against its subcontractor.  
Gerson
, 117 Ill. App. 3d at 310.  
Gerson
 did not involve an employment contract, nor was the measure of damages for breach of contract at issue.

Plaintiff cites to 
Handicapped Children's Education Board v. Lukaszewski
, 112 Wis. 2d 197, 332 N.W.2d 774 (1983), for the proposition that an employee is liable to his or her employer for breaching an employment contract.  
Lukaszewski
, 112 Wis. 2d at 203, 332 N.W.2d at 778.  While true, 
Lukaszewski
 also held that, where a teacher breached her employment contract, the school board was entitled to the cost of hiring a replacement teacher.  
Lukaszewski
, 112 Wis. 2d at 203, 332 N.W.2d at 778.  Thus, contrary to plaintiff's contentions about lost profits, 
Lukaszewski
 stands for the general rule that damages in a breach of employment contract case are the cost of replacing the employee.

Plaintiff similarly cites to 
Roth v. Speck
, 126 A.2d 153 (D.C.  App. 1956), for the proposition that lost profits are not disfavored in breach of employment contract cases.  The 
Roth
 court held, however, that "[t]he measure of damages for breach of an employment contract by an employee is the cost of obtaining other service equivalent to that promised and not performed."  
Roth
, 126 A.2d at 155.

Plaintiff cites to 
Powell v. McDonnell Insurance, Inc.
, C.A. No. 02A01--9608--CH--00176 (Tenn. Ct. App. September. 24, 1997) (unpublished disposition), in violation of Supreme Court Rule 23(e) (166 Ill. 2d R. 23(e)), which prohibits the citation of unpublished dispositions as precedential authority.  Additionally, 
Powell
 involved the breach of a covenant not to compete, where the employee took clients from the employer after he terminated his employment.  
Powell
 is therefore inapposite to this case.

Plaintiff has the burden on appeal of persuading this court that its arguments and statements of the law are correct.  Here, plaintiff has offered no persuasive argument or binding authority to show why the general rule, that the measure of damages for breach of an employment contract by an employee is the cost of obtaining other service equivalent to that promised and not performed, should not apply in this case.  We therefore hold that the trial court did not err in holding that lost profits were unavailable to plaintiff in this case.

In any event, lost profits were nevertheless unavailable in this case because plaintiff failed to produce any evidence that defendant reasonably contemplated them at the time he signed the employment contract with plaintiff.  Plaintiff correctly notes that the rule in Illinois is that, in order for the trial court to award lost profits, plaintiffs must prove their losses with a reasonable degree of certainty, the wrongful act of the defendant must have caused the loss of profits, and the profits were reasonably within the contemplation of the defaulting party at the time of the contract.  
Milex Products, Inc. v. Alra Laboratories, Inc.
, 237 Ill. App. 3d 177, 190 (1992).  Moreover, the profits arising merely from executing the contract are presumed to have been within the contemplation of the breaching party, and the plaintiff need only prove their existence with reasonable certainty.    
Milex
, 237 Ill. App. 3d at 190.  However, where the profits sought by the plaintiff arise only out of a collateral transaction, not only must the plaintiff prove their existence with reasonable certainty but also the plaintiff must prove that they were reasonably within the contemplation of the breaching party when the contract was made.  
Milex
, 237 Ill. App. 3d at 190-91.  The lost profits sought in this case arose out of a collateral transaction, namely, the patient's contract for medical and chiropractic services with plaintiff.  Plaintiff was therefore required to prove that, at the time it hired defendant, the profits arising from these collateral transactions were reasonably within defendant's contemplation.  The record is wholly devoid of any evidence to suggest that defendant agreed to be responsible not only for performing his employment duties but also for the profits plaintiff expected to reap from the sweat of defendant's brow.  Instead, the record indicates only that plaintiff and defendant negotiated extensively about the term of the contract; no other details of the negotiations were brought out.  In the absence of such evidence, the trial court properly concluded that plaintiff was not entitled to lost profits as a component of damages in this case.

Finally, we note that plaintiff's proof of lost profits was insufficient as a matter of law.  Plaintiff's calculation of lost profits purported to show the effect of defendant's departure.  However, shortly before defendant's departure, two other doctors also terminated their employment.  The record indicates that, during the six-month period for which plaintiff claimed lost profits from defendant, the clinic was staffed with only three chiropractors instead of the usual four during defendant's tenure.  Plaintiff showed that the clinic experienced approximately 25% fewer patient visits in that period than in the previous year.  This could as easily be attributed to the clinic having one fewer doctor as it could to defendant's departure.  Additionally, plaintiff calculated its profit by subtracting only defendant's salary from the projection of defendant's gross revenues.  In other words, according to plaintiff, defendant's services resulted in pure profits to plaintiff.  Whatever plaintiff showed, by failing to include any overhead expenses in its calculations, plaintiff did not demonstrate the existence of lost profits with any degree of certainty.  This evidence, therefore, was insufficient as a matter of law.

Plaintiff next contends that the trial court erroneously found the liquidated damages clause to be unenforceable.  Whether a contractual provision is a valid liquidated damages clause or a penalty clause is a question of law (
Grossinger Mortorcorp, Inc. v. American National Bank & Trust Co.
, 240 Ill. App. 3d 737, 749 (1992)), and our review is 
de
 
novo
 (
Woods v. Cole
, 181 Ill. 2d 512, 516 (1998)).  A liquidated damages provision is generally valid and enforceable when 

"(1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained; and (3) actual damages would be uncertain in amount and difficult to prove."  
Grossinger
, 240 Ill. App. 3d at 749.

Additionally, the damages must be for a specific amount for a specific breach; they may not be a penalty to punish nonperformance or as a threat used to secure performance.  
Grossinger
, 240 Ill. App. 3d at 750.  Plaintiff argues that the liquidated damages provision was intended to recoup its costs to train defendant in the occasion of a breach.  We disagree.

The provision at issue is clearly a penalty and bears no relation to training costs at all.  If defendant breached the contract on the very first day, plaintiff's cost to train him would have been almost nothing, yet defendant would be liable to pay plaintiff the full $50,000 under the liquidated damages provision.  If defendant breached the contract on the last day, he would have been fully trained by plaintiff over the course of two years, yet he would be liable to pay plaintiff only $2,083 (or less) under the liquidated damages provision.  Thus, the liquidated damages provision bears an inverse relation to the costs of training defendant--the more training he receives, the less he must pay under the provision.  Accordingly, we find it to be a penalty clause and a mechanism designed to secure defendant's performance of the contract.  The trial court correctly determined that the liquidated damages provision was unenforceable.

Plaintiff next contends that the trial court erred by failing to award actual damages after finding that the liquidated damages clause was a penalty.  According to plaintiff, it was entitled to recoup its training costs for training defendant.  We disagree.  As stated above, the measure of damages for an employee's breach of his or her employment contract is the extra cost of obtaining replacement services.  This might include the cost of training the 
replacement
 employee; however, plaintiff presented no evidence to demonstrate that it even replaced defendant, let alone the amount it expended to train defendant's replacement, if any.  Accordingly, we hold that the trial court did not err in refusing to award plaintiff actual damages.

Plaintiff last contends that it was entitled to an award of attorney fees under the provisions of the employment agreement.  The employment agreement provides, in pertinent part, that "the prevailing party shall be reimbursed for all reasonable expenses incurred *** including reasonable attorneys' fees."  Plaintiff reasons that, because the trial court determined that defendant breached the employment agreement and, as a result, it was entitled to nominal damages, it is a prevailing party under the employment agreement and entitled to an award of attorney fees.  We disagree.

Whether and in what amount to award attorney fees is within the discretion of the trial court and its decision will not be disturbed on review absent an abuse of that discretion.  
In re Estate of Callahan
, 144 Ill. 2d 32, 43-44 (1991).  In this case the trial court determined that both parties were prevailing parties for the purposes of the employment agreement and, consequently, ordered each party to pay its own attorney fees.

A party can be considered to be a "prevailing party" for the purposes of a fee-shifting provision when it is successful on any significant issue in the action and achieves some benefit in bringing suit, when it receives a judgment in its favor, or when it achieves an affirmative recovery.  
Grossinger
, 240 Ill. App. 3d at 753.  Here, plaintiff received a judgment that defendant breached the employment agreement.  Similarly, defendant succeeded on plaintiff's damages claims; the liquidated damages provision was held to be unenforceable, and plaintiff failed to prove the existence of any actual damages.  Accordingly, we hold that the trial court's determination not to award attorney fees was not an abuse of discretion, as both parties were successful on significant issues in the action.

Turning to defendant's cross-appeal, defendant contends that he is entitled to an award of attorney fees as the prevailing party in this suit.  Defendant fails, however, to actually argue this point until his surreply brief.  Accordingly, we find that defendant has waived our consideration of this issue on cross-

appeal.  See 177 Ill. 2d R. 341(e)(7) (points not argued on appeal are waived).  Even if we were to consider the merits of defendant's contentions, we would find that the trial court did not abuse its discretion for the reasons given above.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

COLWELL and RAPP, JJ., concur.