2018 IL App (1st) 171238
No. 1-17-1238
Opinion filed December 27, 2018

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| RAYMOND THOMAS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16 L 6955 |
| | ) | |
| WEATHERGUARD CONSTRUCTION | ) | The Honorable |
| COMPANY, INC., | ) | Joan E. Powell, |
| | ) | Judge, presiding. |
| Defendant-Appellant. | ) | |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     In 2007, plaintiff Raymond Thomas sued defendant Weatherguard Construction Company, Inc., alleging that defendant was his employer and owed him $47,666 in commissions for contracts that plaintiff had procured on defendant's behalf. *Thomas v. Weatherguard Construction Co*, 2015 IL App

(1st) 142785, ¶¶ 1, 3. In 2014, after a bench trial, the trial court found that defendant was indeed plaintiff's employer and did owe plaintiff commissions, but awarded plaintiff only $9226.52 in damages, or roughly one-fifth of what plaintiff had originally sought. *Thomas*, 2015 IL App (1st) 142785, ¶ 1. On the subsequent appeal in 2015, this court affirmed the trial court's judgment in plaintiff's favor and the trial court's damages award of $9226.52 plus costs. *Thomas*, 2015 IL App (1st) 142785, ¶ 1, 40.

¶ 2    However, this court "remand[ed] this case to the trial court for the limited purpose of applying the attorney fees provision of the 2011 amendment [to the Wage Payment Act] retroactively and awarding plaintiff 'costs and all reasonable attorney's fees.' " *Thomas*, 2015 IL App (1st) 142785, ¶ 78 (quoting 820 ILCS 115/14(a) (West 2012)).

¶ 3    On remand, neither party requested an evidentiary hearing and the trial court, who had also presided over the bench trial, considered the issue based on the briefs and exhibits submitted by the parties. On April 21, 2017, after 10 years of litigation, the trial court found that plaintiff was "entitled to attorney fees in the amount of $178,449.97" and "costs in the amount of $1,124.68," for a total of $179,574.65, or roughly 20 times plaintiff's damages award. It is this April 21, 2017, order that is the primary subject of the present appeal.

¶ 4        In essence, plaintiff argues that we should focus on the 10 years of hard-fought litigation it took for him to gain his award, while defendant argues that we should focus on the disparity between the damages award and the attorney fees award.

¶ 5        Defendant also appeals from the denial of his petition to substitute judge after the matter was remanded. For the following reasons, this court affirms.

¶ 6                                    BACKGROUND

¶ 7        On December 5, 2007, plaintiff filed a complaint that was amended on July 14, 2008; and it was the amended complaint on which the parties proceeded to trial. The amended complaint alleged that defendant was in the business of repairing and replacing roofs, siding doors and windows for homes that sustained damage due to weather conditions; and that defendant hired plaintiff on April 7, 2007, as a commissioned sales representative to solicit contracts for defendant. Plaintiff alleged that defendant promised to pay him commissions equal to 20 percent of the total value of the contracts, and that defendant terminated his employment on July 9, 2007, after plaintiff had secured contracts in the amount of $245,010.57. Plaintiff alleged that he was entitled to commissions in the amount of $49,002.11, but had been paid only $1335.57, and therefore was owed $47,666.54 in unpaid commissions.

Plaintiff's complaint sought $47,666.54, as well as punitive damages and attorney fees.

¶ 8      Count I of the four-count complaint alleged that defendant violated the Sales Representative Act (820 ILCS 120/1 *et seq.* (West 2006), which requires a principal to pay a sales representative earned commissions within 13 days after the representative's termination of employment.  In the alternative, count II alleged that defendant violated the Wage Payment Act (820 ILCS 115/1 *et seq.* (West 2006)), which required an employer to pay an employee final compensation at the time of termination.  Count III was for breach of contract, alleging that defendant breached its oral contract with plaintiff by failing to pay him as agreed, and count IV was for unjust enrichment.

¶ 9      In its answer, defendant denied that plaintiff was its employee, denied that it had any business relationship with plaintiff and denied that it owed plaintiff any commissions.

¶ 10      On June 12, 2010, defendant moved for summary judgment.  The trial court granted the motion with respect to the count based on the Sales Representative Act (count I), but denied the motion with respect to all the other counts.

¶ 11      The bench trial began, and on June 28 and 29, 2011, plaintiff presented his case-in-chief, calling only two witnesses:  himself; and Brett McDonald,

defendant's president and owner. On July 13, 2011, defendant moved for a directed finding that the trial court denied on July 22, 2011. On November 9 and 10, 2011, defendant presented its case-in-chief, calling only one witness: its president and owner, Brett McDonald. The primary issue at trial and on appeal was whether plaintiff was, or was not, defendant's employee. *Thomas*, 2015 IL App (1st) 142785, ¶ 43. Since that is not an issue on this appeal, and since this court already described the evidence at trial in detail in our prior opinion, we incorporate that opinion here by reference. *Thomas*, 2015 IL App (1st) 142785, ¶¶ 11-31 (describing the evidence at trial).

¶ 12        On January 25, 2013, the trial court issued a written order and opinion, finding that plaintiff's testimony was credible, that plaintiff and defendant had "an oral contract whereby [plaintiff] was to receive commissions of 20% of the completed contract," and that plaintiff was entitled to a 20% commission on the net value of the 31 completed contracts that he had secured. The trial court then directed the parties "to figure out the amount due on commissions according to the finding above. In other words, use 20% of the net profits from each contract secured by [plaintiff] that was accepted and built out by [defendant]."

¶ 13        The trial court also found that defendant was plaintiff's employer for purposes of the Wage Payment Act, that defendant had violated this Act, and

that plaintiff was therefore entitled to a doubling of the amount of the commission award.

¶ 14        On April 4, 2013, defendant filed objections to the court's ordered procedure, and on April 5, 2013, the trial court agreed to determine the amount of damages to be awarded.  On April 17, 2014, the trial court awarded plaintiff $9226.52, doubled, plus court costs.  On May 16, 2014, defendant moved to reconsider, claiming that the trial court's doubling of the commissions pursuant to the Wage Payment Act was incorrect.  In response, plaintiff claimed, among other things, that the trial court should have also provided for attorney fees.  On August 14, 2014, the trial court vacated its prior April 17, 2014, order and awarded plaintiff $9226.52, plus costs, but struck the doubling of the damages award.

¶ 15        Both parties filed notices of appeals, which this court consolidated.  In our opinion, issued on September 30, 2015, this court observed that the primary issue on appeal was whether the trial court erred in finding that plaintiff was defendant's employee. *Thomas*, 2015 IL App (1st) 142785, ¶ 43. Plaintiff also claimed, among other things, that he was entitled to attorney fees.  This court affirmed the trial court's judgment and damages award, but determined that plaintiff was also entitled to costs and all reasonable attorney fees and, thus, we remanded the case for the limited purpose of determining what those costs and

reasonable attorney fees were. *Thomas*, 2015 IL App (1st) 142785, ¶¶ 59, 75, 78.

¶ 16          Defendant filed a petition for rehearing which this court denied on November 2, 2015, and a petition for leave to appeal which the Illinois Supreme Court denied on January 20, 2016. On remand to the trial court, the parties submitted briefs and exhibits, and the court heard argument. Neither party requested an evidentiary hearing, so none was held. On remand, the trial judge was the same trial judge who had presided over the bench trial and issued the underlying judgment in the case.

¶ 17          On remand, plaintiff submitted a fee petition on September 7, 2016, seeking attorney fees of $169,037.49, and $1244.68, to date,[1] for fees and costs incurred since September 2007. In support, his attorney, Arnold Toole of Toole Law Offices, submitted his own affidavit and a copy of the computerized records maintained by his office. Toole averred that each entry was "made on or about the day the time [was] expended." The computerized records included a list of expenses.

¶ 18          Arnold Toole declared under penalty of perjury that he had personal knowledge of "all fees and costs incurred in this matter," that he was the only attorney in his law firm; and that he was "the sole attorney representing

---

[1] Plaintiff later revised these amounts upward to encompass additional fees and costs incurred after September 7, 2016. *Infra* ¶ 32.

[plaintiff] throughout this litigation," except for trial and for one court hearing where an attorney covered for him. Toole declared that he had been a practicing attorney in Illinois for over 22 years, that he had significant experience "handling labor and employment law matters," including wage claims. His hourly rate was $350 per hour, "except for status hearings, motion hearings and general court appearances," for which he billed at a lower flat rate of $200 per appearance.

¶ 19      In plaintiff's petition for fees, which Toole wrote, Toole claimed that the matter was complex because he had to prove that defendant was plaintiff's employer without a written employment agreement or W2's, and that he had to prove agency and the amount of commissions. Toole also claimed that the appeal was complex because there were no Illinois state cases directly on point, thereby requiring a considerable amount of research, and that he had to respond not only to the appeal but also to defendant's petitions for rehearing and for leave to appeal.

¶ 20      In the petition, Toole also observed that, since "there is no fee petition from Attorney Jason Bruce (also a very seasoned litigation attorney)," and plaintiff's trial co-counsel, defendant "is in effect receiving a 'windfall.' [Defendant] is not being charged for the substantial amount of time that Attorney Bruce worked on trial and post-trial matters." A footnote explains:

"Shortly before commencement of the trial, attorney Jason Bruce began working on this matter, however none of Jason's work is included in this, or any other, fee petition. Jason Bruce died in 2013, and there is no available record of his hours worked in this matter."

¶ 21　　Toole included the affidavits of three other attorneys who handle labor and employment cases in the Chicago area and who swore to Toole's experience in handling employment cases, and the range of hourly rates commensurate with Toole's experience. All three attorneys attested that Toole's hourly rates were within, if not below, standard rates.

¶ 22　　On September 21, 2016, defendant filed a request for production of documents seeking any other records plaintiff had with respect to attorney fees and costs, as well as (1) "the last 10 fee petitions" filed by Toole, (2) records showing that Toole "charged any client" $350 per hour, and (3) all diaries or calendars for Toole for the last nine years. On September 21, 2016, the trial court issued a written order stating, in relevant part, that defendant's "request for discovery is denied by the court for the reasons stated in court and on the record which is incorporated herein."

¶ 23　　On the record, the trial court denied defendant's document production request, stating:

"THE COURT: I'm surprised anybody would really even bring up a question about this attorney fee petition. The costs are so low.

This is a Law Division case. It was a bench trial. There were complex issues. This was on the commercial call.

Counsel only charges $200 *** to come to court, and on a commercial call with as many as 30 cases a day before a judge to get heard, you all know you're here sometimes for hours, and this is one—$ 350 for trial time.

This is such a streamlined easy to read item by item fee petition[.]"

The trial court also expressed a concern about "incurring even more costs after having taken a look at the fee petition and the low, low fees that are way below what I normally see in the Law Division, and especially on a commercial call."

¶ 24 Defense counsel then responded concerning specific documents that he had requested. Concerning his request for Toole's last 10 fee petitions, defense counsel stated that he (defense counsel) "charge[d] this client $195" per hour and that he wanted to discover whether Toole was asking for less from other courts. Concerning his request for other records relating to fees, defense explained that he wanted "the metadata" that would "show whether or not these timed entries were created contemporaneously or whether they were just entered sometime after the fact."

¶ 25        During the September 21, 2016, hearing, the trial court stated that it was "a little bit angry" with defense counsel and the court directed him, at one point, "to stop it now." While the cold transcript does not reveal what counsel was doing at the moment that the court told him "to stop it," the trial court had observed previously in the proceeding: "I'm looking at your body language with your hands out, like what in the world are you talking about, Judge?"

¶ 26        After stating that it was a "bit angry" with defense counsel, the trial court "found that you [(defense counsel)] have prolonged a lot of things," "demeaned the other attorneys," and "made sarcastic remarks." Defense counsel responded: "I feel that you are prejudiced against me and I would ask that there be a change of judge for this hearing." The trial court stated that it found defense counsel to be "a difficult attorney," primarily because of his sarcastic attitude and behavior. However, the trial court stated that it was not prejudiced against defense counsel and denied his motion to transfer the attorney fee petition to another judge.

¶ 27        Defense counsel then argued that attorney fees should be allowed only for fees associated specifically with the Wage Payment Act claim and he asked for 60 days to go through the entire record before responding. Plaintiff responded: "That judgment and that interest keeps accruing. There's no effort

to make a payment." The trial court gave defendant until November 14, 2016, or over 60 days since the September 7 fee petition was filed, to respond.

¶ 28    The September 21, 2016, hearing ended with defense counsel apologizing to the trial court. After the trial court observed that the bench trial had been "a little nasty," defense counsel stated:

"DEFENSE COUNSEL:    Judge, if I may, part—just so you understand fully, there's a long history between Mr. Toole and I.

Many of the things Mr. Toole would say in front of the Court were not accurate. Okay.

Maybe it's my Irish. My Irish got up because I don't like him saying stuff that was not accurate about me.

So if you took it that I was responding to that inappropriately, I apologize to the court. I never do that.

But when I'm—when somebody is saying something to a judge that is untrue about me, then I will respond. And if the Court took that in the wrong way, I apologize to the Court.

I am not like that. I've never been like that in my career.

THE COURT:  I'm glad to know that. I accept your apology."

After additional colloquy, the trial court repeated "I accept your apology, sir." and defense counsel stated: "Thank you." The parties and the court then agreed

that plaintiff's reply brief was due December 19, and the matter was to be set for a hearing on December 22, 2016.

¶ 29    On November 14, 2016, defendant filed its response to plaintiff's fee petition arguing among other things: (1) that the trial judge was biased, as evidenced by the trial judge's remarks at the last hearing; (2) that defendant lacked enough information to submit the petition for expert analysis due to the court's denial of defendant's request for documents; (3) that the petition failed to segregate the work performed on the Wage Payment Act claim, which defendant argued was the only work for which plaintiff was entitled to fees; and (4) that the appellate court order did not include fees for appellate work.

¶ 30    The following day, on November 15, 2016, defendant moved for substitution of judge for cause, based on the trial judge's remarks at the September 21, 2016, hearing.  On December 2, 2016, the trial judge issued a response observing that defendant's petition for substitution of judge "present[ed] a lopsided account" and that "[i]t is apparent to this Court, at least, that [defense counsel] is trying to create an issue."  The petition was then fully briefed by the parties and transferred to the chief judge of the law division for reassignment.

¶ 31    On January 20, 2017, the petition was heard by Judge Ronald F. Bartkowicz.  At the hearing on the petition, Judge Bartkowicz observed that a

trial judge had an obligation to ensure civility in his or her courtroom, and that, to accomplish that end, the judge could comment on the demeanor of an attorney whose conduct fell outside the bounds of civility; and that such comments did not indicate any bias or prejudice against the attorney or his or her client. Judge Bartkowicz found that, in the case at bar, Judge Powell's comments about defense counsel's lack of civility did not indicate a bias that called for disqualification. Similarly, Judge Bartkowicz observed that a judge has an obligation to determine whether a discovery request is reasonable and proportionate to the issue at hand. In the case at bar, Judge Bartkowicz found that Judge Powell "express[ed] some skepticism over the validity of [defendant's] discovery requests" and "that's what the judge is supposed to do." Denying the petition, Judge Bartkowicz told defense counsel that "the protection that you have" is that the judge has "to make specific findings" concerning the fees and their reasonableness. After the petition was denied, the matter was transferred back to Judge Powell.

¶ 32 On March 3, 2017, plaintiff supplemented his fees petition with an itemization of the additional fees incurred responding to (1) defendant's objections to plaintiff's fee petition, and (2) defendant's petition for substitution of judge. Thus, as of March 3, 2017, plaintiff sought a total of $181,366.66 in attorney fees and $1244.68 in costs.

¶ 33        On March 31, 2017, defendant filed a supplemental response with an expert report authored by retired Judge Daniel Locallo that reviewed plaintiff's fee petition. With respect to the attorney fees, Judge Locallo opined: (1) that it should not have taken Toole 45 hours to draft a complaint or 13.75 hours to draft interrogatories; (2) that Toole's $200 flat fee could have been charged for five minutes in court; (3) that Toole failed to detail what occurred at trial and postrial meetings; and (4) that the great disparity between the damage award and the amount requested for attorney fees shows that the requested amount was unreasonable. With respect to costs, Judge Locallo opined that plaintiff should receive $968.35, rather than the $1244.68 requested, because plaintiff "should not receive printing fees." While Judge Locallo opined what an appropriate amount for costs would be, he did not opine what an appropriate amount for attorney fees would be. On April 7, 2017, plaintiff filed an objection to the trial court's considering Judge Locallo's report.

¶ 34        On April 19, 2017, the parties appeared in court for argument on the fee petition. After observing that Judge Locallo was in the courtroom, the trial court stated: "This is not an evidentiary hearing. You didn't ask for one." However, the trial court ruled that it was going to consider Judge Locallo's report over plaintiff's objection.

¶ 35        On April 21, 2017, the trial court issued the attorney fees order that is the subject of the present appeal.  The detailed order is 14 pages long and single-spaced.

¶ 36        With respect to counsel's rate, the trial court found that it was "within the prevailing range (here, low average) for the experience of the attorney and the type of work done."  In reaching this conclusion, the trial judge observed that she had been assigned to the law division for seven years and had presided over "many bench trials and attorney fee petition" and, thus, was aware of attorney rates.  In addition, she found the three attorney affidavits provided by plaintiff to be "helpful."  Based on this information, she found:

> "In the Law Division, the range of attorney fees is about $325 an hour to $550 an hour, and occasionally higher. Even back in 2007-2009, the range of fees was about $250 to $500 an hour  Mr. Toole presents a fee petition at $350 an hour and even less for court status and hearings. His fees are on the lower end of the prevailing rate."

¶ 37        With respect to the disparity between the damage award and the fees requested, the trial court found:  "The public policy purpose of the statute and the benefit to Plaintiff, where he does not have to deduct attorney fees from the relatively small judgment award has been considered by the Court and take[s]

the issues here outside of standard proportionality of damage awards to attorney fees comparisons for fee determination purposes."

¶ 38        With respect to defendant's argument that plaintiff could recover attorney fees only for fees specifically connected to the Wage Payment Act, the trial court found:

> "This was an aggressively fought case. It was not a simple Wage Act case. The facts of this particular case made it more complex than typical Wage Act cases and Plaintiff's attorney succeeded not only in obtaining a judgment in Plaintiff's favor but also attorney fees… a battle that continued in the Appellate Court and back. Plaintiff also presented a matter of first-impression. The Court[ ] finds that Mr. Toole's work on the case was necessary to obtaining the benefits received by the Plaintiff.
>
> The Court finds that Plaintiff's Sales Representative Act count, the Breach of Contract count and alternative count of Unjust Enrichment were all part of the same common core of facts and are legal theories related to the Wage Payment Act claim. From the beginning, the Plaintiff was simply seeking payment of his commissions/wages and the facts alleged were basically the same for all causes of action. Plaintiff is entitled to all his fees and costs seeking that end."

¶ 39    With respect to plaintiff's request for posttrial and appellate fees, the trial court found that "[t]he post-trial motion practice, appeal and more motion practice were a continuation of the proceeding and an integral part of Plaintiff's claim.  Plaintiff was required to address all the issues to maintain the benefit achieved."

¶ 40    After considering each fee and cost, the trial court disallowed or reduced 11 entries, for a total reduction of over $5000. The trial court then found that plaintiff was entitled to attorney fees in the amount of $178,449.97, and costs in the amount of $1124.68, for a total of $179,574.65.

¶ 41    On May 17, 2017, defendant filed a notice of appeal, stating that it was appealing both "the April 21, 2017 Order on Plaintiff's Petition for Attorney Fees and the January 20, 2017 Order on Defendant's Motion to Disqualify Judge Powell."  This timely appeal followed.

¶ 42                              ANALYSIS

¶ 43    On this appeal, defendant claims (1) that the trial court was biased against it and that the trial court erred in denying its petition for substitution of judge with cause; (2) that the trial court erred in denying its document request; and (3) that the trial court's award of attorney fees is excessive.  For the following reasons, we affirm.

¶ 44                                   I. Petition for Substitution of Judge

¶ 45            First, defendant argues that the trial court was biased against it and its counsel and that Judge Bartkowicz erred in denying its petition for substitution of judge with cause.

¶ 46            This court has found that "[o]ur review of a circuit court's ruling on a motion to substitute judge is *de novo*." *Shacter v. Ctiy of Chicago*, 2011 IL App (1st) 103582, ¶ 22. However, that finding was based on a subsequently vacated opinion. This court has also found that our standard of review is whether the finding was against the manifest weight of the evidence. *In re Marriage of Schweihs*, 272 Ill. App. 3d 653, 659 (1995) (on appeal, we will "not reverse a determination on allegations of [a trial judge's] prejudice unless the finding is contrary to the manifest weight of the evidence" (discussed in *In re Estate of Wilson*, 238 Ill. 2d 519, 558-59 (2010))). See also *People v. Klein*, 2015 IL App (3d) 130052, ¶ 83 (although both parties argued for an against-the-manifest-weight standard, appellate court found *de novo* review applied to question of law). Neither party in the case at bar has briefed or argued the standard of review. Whether our standard is *de novo* or against the manifest weight, our finding would be the same.

¶ 47            "A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice." *Eychaner*

*v. Gross*, 202 Ill. 2d 228, 280 (2002) citing *In re Marriage of Petersen*, 319 Ill. App. 3d 325, 339 (2001), and *In re Marriage of Hartian*, 222 Ill. App. 3d 566, 569 (1991)). See also *People v. Vance*, 76 Ill. 2d 171, 178 (1979) ("the burden of establishing actual prejudice rests" on the party alleging it). The party making the charge of prejudice "must present evidence of personal bias stemming from an extra-judicial source and evidence of prejudicial trial conduct." *Petersen*, 319 Ill. App. 3d at 339; *Hartian*, 222 Ill. App. 3d at 569. See also *Eychaner*, 202 Ill. 2d at 280.

¶ 48        "Proving prejudice so as to justify a substitution for cause is a heavy burden and the conclusion of prejudice will not be made lightly." *Petersen*, 319 Ill. App. 3d at 340. See also *Eychaner*, 202 Ill. 2d at 280 (" 'To conclude that a judge is disqualified because of prejudice is not, of course, a judgment to be lightly made.' " (quoting *Vance*, 76 Ill. 2d at 179)). "A judge's rulings alone almost never constitute a valid basis for a claim of judicial bias or partiality." *Eychaner*, 202 Ill. 2d at 280; *Hartian*, 222 Ill. App. 3d at 569 ("Allegedly erroneous findings and rulings by the circuit court are insufficient reasons to believe the court has personal bias or prejudice for or against a litigant."); *Vance*, 76 Ill. 2d at 179 ("the fact that a judge has ruled adversely" to a party "does not disqualify that judge from sitting" in subsequent matters).

¶ 49 In the case at bar, defendant does not offer any evidence of judicial bias or prejudice stemming from an outside source. Instead, defendant bases its claim of bias solely on the judge's conduct and remarks during the proceedings. However, " 'judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.' " *Eychaner*, 202 Ill. 2d at 281 (quoting *Liteky v. U.S.*, 510 U.S. 540, 555 (1994)). The exceptions are if the remarks reveal a bias stemming from an extrajudicial source or " 'if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.' " *Eychaner*, 202 Ill. 2d at 281 (quoting *Liteky.*, 510 U.S. at 555).

¶ 50 The remarks that the trial court made at the September 21, 2016, hearing do not display the kind of deep-seated favoritism or antagonism that would make fair judgment impossible. The trial court based its remarks on the conduct and behavior of counsel, which counsel himself apologized for at the end of the hearing: after the trial court observed that the bench trial had been "a little nasty," defense counsel stated:

> "DEFENSE COUNSEL: Judge, if I may, part—just so you understand fully, there's a long history between Mr. Toole and I.
>
> Many of the things Mr. Toole would say in front of the Court were not accurate. Okay.

Maybe it's my Irish. My Irish got up because I don't like him saying stuff that was not accurate about me.

So if you took it that I was responding to that inappropriately, I apologize to the court. I never do that.

But when I'm—when somebody is saying something to a judge that is untrue about me, then I will respond. And if the Court took that in the wrong way, I apologize to the Court.

I am not like that. I've never been like that in my career.

THE COURT: I'm glad to know that. I accept your apology."

Whether we apply a *de novo* or an against-the-manifest-weight standard, we cannot find error in the denial of defendant's petition to substitute the trial judge for cause.

¶ 51                    II. Document Request

¶ 52        Second, defendant argues that the trial court abused its discretion in denying its document request, after the case was remanded for the determination of reasonable attorney fees.

¶ 53        A trial court's discovery order is ordinarily reviewed only for an abuse of discretion (*Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 13), and defendant does not argue for a different standard of review. An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful,

unreasonable, or where no reasonable person would take the view adopted by the trial court. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24; *People v. Patrick*, 233 Ill. 2d 62, 68 (2009). On appeal, defendant's primary argument is that the trial court barred defendant from discovering whether plaintiff's counsel had a contingent fee arrangement or an hourly fee contract with plaintiff.[2] However, defendant's document request did not ask for that information.

¶ 54        Defendant's document request sought six items:

"1. Copies of any documents that Plaintiff maintains supports Plaintiff's claim for attorney's fees or costs.

2. All materials related to the electronic billing records or any electronically stored information related to any element of the claim for attorney's fees or costs.

3. Copies of the last 10 fee petitions by Arnold Toole or Toole Law Office, L.L.C.

4. Copies of any documentation that supports that Arnold Toole or Toole Law office, L.L.C. has charged any client $350.00 per hour.

---

[2] On appeal, defendant argued:  "Judge Powell did not permit [defendant] to conduct discovery into whether the Plaintiff had a contingent fee arrangement with his attorney. As such, Judge Powell's fee-shifting analysis is fundamentally flawed and should be disregarded on that basis."

5. Copies of the diary, date book or electronic calendar for Arnold Toole or Toole Law Office, LLC from September 3, 2007 to September 2016.

6. Copies of all receipts for any and all costs or expenses."

These six items made no reference to a contingency-fee arrangement. In addition, on September 21, 2016, when the trial court heard argument concerning the request, defense counsel explained why he wanted certain items, but made no reference to a contingency-fee arrangement. Arguments not made before the trial court are forfeited on appeal. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 413 (2002) (arguments not raised before the trial court are forfeited on appeal); *Cambridge Engineering, Inc. v. Mercury Partners 90 Bl, Inc.*, 378 Ill. App. 3d 437, 456 (2007) ("issues not raised below are considered waived"). In addition, to the extent that defendant is suggesting that shifting the expected payment of fees from defendant to plaintiff is inappropriate, the purpose of the attorney fee provision, as we discuss below (*infra* ¶¶ 69-71), is to shift fee payment from the plaintiffs, who may not otherwise be able to afford suit, to their employers who allegedly withheld their wages. This provision is how these attorneys make their money and the reason why they take these cases. *Young v. Alden Gardens of Waterford, L.L.C.*, 2015 IL App (1st) 131887, ¶ 99.

¶ 55　　　　In *Young*, this court observed that to interpret an attorney fee provision to cover only the amount that a plaintiff obligated herself to pay in a contingent fee arrangement "would seriously undermine the ability of employees who suffer *** at the hands of their employers to obtain counsel willing to pursue such claims." *Young*, 2015 IL App (1st) 131887, ¶ 99. In *Young*, this court was considering an employee whistleblower act rather than the act in question here; however, both acts involved employees attempting to recover from their employers for alleged wrongdoing. *Young*, 2015 IL App (1st) 131887, ¶ 99. The limit that defendant suggests "would do little to entice competent counsel to undertake an individual employee's representation." *Young*, 2015 IL App (1st) 131887, ¶ 99. As a result, this court rejected such an interpretation in *Young*, finding that "it would lead to an unjust result at odds with the legislature's purpose to protect employees from adverse employment actions." *Young*, 2015 IL App (1st) 131887, ¶ 99. This finding applies equally to the case and statute in front of us.

¶ 56　　　　In arguing that recovery should be limited to the contingency fee if there is a contingency-fee agreement, defendant relies primarily on *Career Concepts, Inc. v. Synergy, Inc.*, 372 Ill. App. 3d 395, 405-06 (2007). However, that case expressly states that it is "distinguishable" from other cases "because no evidence was presented that the parties' had a fee-shifting provision" in either a

statute or contract. *Career Concepts*, 372 Ill. App. 3d at 405-06. For example, the *Career Concepts* court observed that it was distinguishable from the case of *Med+Plus Neck & Back Pain Center, S.C. v. Noffsinger*, 311 Ill. App. 3d 853, 861 (2000), where the contract at issue contained an explicit fee-shifting provision. *Career Concepts* is different from cases like ours in which contracts and statutes put the parties on notice, in advance, that fees may be shifted, instead of being borne by the individual parties as is the typical case. In sum, we cannot find that the trial court erred in denying defendant's discovery request based on an alleged need to discover a contingency-fee agreement, where defendant did not expressly request a contingency-fee agreement in discovery and where such an agreement, if it existed, would not have limited the fee award in the case at bar.

¶ 57    In addition, defendant argues that, without the documents sought in its document request, neither defendant nor the court could determine if Toole's fee entries were made contemporaneously or what Toole's usual and customary charges were. However, Toole averred in an affidavit that the entries were made contemporaneously,[3] and the trial court found, based on its own experience as a judge and on the three affidavits submitted by other attorneys,

_____

[3] Toole averred in his affidavit, submitted with the petition for fees, that each entry on his attached office records was "made on or about the day the time [was] expended."

that Toole's rates were on the low side and that the time spent was reasonable. *Young*, 2015 IL App (1st) 131887, ¶ 114 (the hourly rate and time spent may be supported by affidavits of other attorneys in the field and by the trial judge's own knowledge, particularly where the trial judge has presided over the litigation since its inception). We cannot find that the trial court abused its discretion, particularly when defendant did not seek to cross-examine on this issue by requesting an evidentiary hearing, if it had doubts about counsel's credibility. *C.f. Young*, 2015 IL App (1st) 131887, ¶ 113 (while evidentiary hearings for fee petitions are not required in every case, they are available when a petition raises factual or credibility issues).

¶ 58        Thus, we cannot find that the trial court abused its discretion by denying defendant's document request.

¶ 59                         III. Attorney Fee Award

¶ 60        Lastly, defendant claims that the trial court's award of attorney fees and costs is excessive.

¶ 61        Usually, parties are responsible for their own attorney fees. *Career Concepts*, 372 Ill. App. 3d at 405. However, if expressly authorized by statute or by agreement, the court may award attorney fees and costs to a prevailing party so long as they are reasonable. *Career Concepts,* 372 Ill. App. 3d at 405. "A party can be considered a 'prevailing party' for the purposes of a fee-shifting

provision when it is successful on any significant issue in the action and achieves some benefit in bringing suit, when it receives a judgment in its favor, or when it achieves an affirmative recovery." *Med+Plus Neck & Back Pain Center, S.C. v. Noffsinger*, 311 Ill. App. 3d 853, 861 (2000); see also *Career Concepts*, 372 Ill. App. 3d at 406. "Whether and in what amount to award attorney fees is within the discretion of the trial court and its decision will not be disturbed on review absent an abuse of that discretion." *Med+Plus Neck*, 311 Ill. App. 3d at 861. As we stated above, an abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *Heroy*, 2017 IL 120205, ¶ 24; *Patrick*, 233 Ill. 2d at 68.

¶ 62 First, defendant argues that plaintiff is entitled to only those attorney fees and costs related specifically to the Wage Payment Act, while plaintiff argues that he is entitled to all fees and costs of the lawsuit since the suit involved "a common core of facts" and "related legal theories." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 66 (discussing *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983)).

¶ 63 Generally, "where a plaintiff presents several claims for relief in the same lawsuit, and only some of the claims for relief are successful, attorney fees may be allowed for all claims involving a common core of facts or based on related

legal theories." *Sandholm*, 2012 IL 111443, ¶ 66 (discussing *Hensley,* 461 U.S. at 434-35). The key word in that sentence is "may." If the fees are authorized by a particular statute, the court must scrutinize the particular language and purpose of that statute to determine if it permits fees for related claims. *Sandholm*, 2012 IL 111443, ¶¶ 65-66 (scrutinizing the language and purpose of the authorizing statute to determine whether fees for related claims were authorized). To the extent that an attorney fee determination involves the interpretation of a statute, that part of our analysis is subject to *de novo* review. *Sandholm*, 2012 IL 111443, ¶ 64. *De novo* review means that an appellate court performs the same analysis that a trial judge would perform. *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, ¶ 26.

¶ 64        "With statutory construction, our primary goal is to ascertain the legislat[ors'] intent, and the best indication of their intent is the plain and ordinary meaning of the words they chose to use." *People v. Miles*, 2017 IL App (1st) 132719, ¶ 25; *State ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 8 (citing *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23).

¶ 65        "When interpreting a statute, we do not read a portion of it in isolation; instead, we read it in its entirety, keeping in mind the subject it addresses and the drafters' apparent objective in enacting it." *Miles*, 2017 IL App (1st)

132719, ¶ 25; *People v. Chatman*, 2016 IL App (1st) 152395, ¶ 30. When considering the drafters' objective, we examine the problems that the legislature intended to remedy with the law and the consequences of construing it one way or the other. *People v. Almond*, 2015 IL 113817, ¶ 34 (we "consider the reason for the law and the problems intended to be remedied"); *People v. Eppinger*, 2013 IL 114121, ¶ 21 (legislative intent may be ascertained by considering "the statute in its entirety, its nature and object, and the consequences of construing it one way or the other").

¶ 66    Where the language is plain and unambiguous, we apply the statute without resort to further aids of statutory interpretation. *In re Lance H.*, 2014 IL 114899, ¶ 11; *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003); *Maschek v. City of Chicago*, 2015 IL App (1st) 150520, ¶ 44 ("If the statutory language is clear, we must apply it, without resort to any aids of statutory construction."). "If, and only if, the statutory language is ambiguous, we may look to other sources to ascertain the legislature's intent." *Maschek*, 2015 IL App (1st) 150520, ¶ 44 (citing *Krohe*, 204 Ill. 2d at 395). "These other sources include primarily the statute's legislative history and debates." *Maschek*, 2015 IL App (1st) 150520, ¶ 44 (citing *Krohe*, 204 Ill. 2d at 398). "When interpreting an ambiguous phrase in a statute, our supreme court looks especially to the remarks of a bill's sponsor." *Maschek*, 2015 IL App (1st) 150520, ¶ 62 (citing

*Krohe*, 204 Ill. 2d at 398); see also *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 68 (giving more weight to the remarks of "the chief sponsor of the legislation"); *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 31 (quoting the sponsor's remarks when interpreting a statute). "The remarks made immediately prior to passage are particularly important." *Maschek*, 2015 IL App (1st) 150520, ¶ 62 (citing *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶¶ 51-53 (quoting the sponsors' remarks in order to interpret a statute and noting that, following these remarks, the bill passed)).

¶ 67        The Wage Payment Act provides, in relevant part:

> "(a) Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover *** in a civil action ***. In a civil action, such employee shall also recover costs and all reasonable attorney's fees." 820 ILCS 115/14(a) (West 2010).

¶ 68        First, we observe that the statute unambiguously states "*all* reasonable attorney's fees," (emphasis added) without any limiting language except for the word "reasonable." 820 ILCS 115/14(a) (West 2010). Thus, the language is distinguishable from the language at issue in *Sandholm*, where our supreme court limited attorney fees to only those fees related to the claim in the act.

*Sandholm*, 2012 IL 111443, ¶ 65. The act at issue in *Sandholm* provided: "The court shall award a moving party who prevails in a motion under this Act reasonable attorney's fees and costs *incurred in connection with the motion*." (Emphasis added.) 735 ILCS 110/25 (West 2008). Examining this statutory language, our supreme court found: "In our view, the language in section 25 is unambiguous and supports only one interpretation. Attorney fees 'incurred in connection with the motion' include only those fees which can specifically be delineated as incurred in connection with the motion to dismiss filed under the Act." *Sandholm*, 2012 IL 111443, ¶ 65 (quoting 735 ILCS 110/25 (West 2008)). While our supreme court acknowledged that attorney fees are generally allowed for all claims involving a common core of facts, the statute before it was an exception, because "it specifically provides that only fees 'incurred in connection with the motion' filed under the Act are allowed." *Sandholm*, 2012 IL 111443, ¶ 66 (quoting 735 ILCS 110/25 (West 2008)). In contrast, the statute before us contains no such limiting language. Thus, both *Sandholm* and the plain language of the act support an award for all claims involving a common core of facts.

¶ 69    In addition, the attorney fees provision here refers to an "action" rather than to a motion or a claim, in contrast to the act in *Sandholm* which referred specifically to "the motion." *Sandholm*, 2012 IL 111443, ¶ 65. The attorney

32

fees provision in the case at bar authorizes recovery for all reasonable attorney fees "[i]n a civil action" for unpaid wages. 820 ILCS 115/14(a) (West 2010). The absence of the limiting language that was present in *Sandholm* and the act's use of the broad, all encompassing "civil action" lead us to find that this statute does not present an exception to the general rule that a plaintiff may recover attorney fees for "all claims involving a common core of facts or based on related legal theories." *Sandholm*, 2012 IL 111443, ¶ 66.

¶ 70    Second, the legislative history also supports this finding. Although the Wage Payment Act does not contain a preamble stating its purpose and there is limited legislative history on the passage of the attorney fee provision, prior to passage of the 2011 amendment in the Senate, the senators did discuss the attorney fee provision. Most of the discussion concerned protecting exploited workers from unscrupulous businesses. 96th Ill. Gen. Assem., Senate Proceedings, March 18, 2010, at 217-25. One senator observed that there will be a group of attorneys willing to take these cases, advertising " 'no fee unless you recover.' " 96th Ill. Gen. Assem., Senate Proceedings, March 18, 2010, at 221 (statement of Senator Dahl). He stated he was afraid that a worker may demand increased wages, not receive it, and then file a lawsuit; and the employer may decide it is cheaper to pay the wage than the attorney. 96th Ill. Gen. Assem., Senate Proceedings, March 18, 2010, at 221-22 (statement of

Senator Dahl). However, the bill's sponsor assured the questioner that this was not the purpose of the bill and that the purpose was to protect workers who were promised payment and who continued to work relying on that promise and then received no payment. 96th Ill. Gen. Assem., Senate Proceedings, March 18, 2010, at 222 (statement of Senator Delgado). Thus, to the extent that some legislative intent can be gleaned from this legislative history, the legislators contemplated that litigation costs would not be borne by the plaintiff.

¶ 71       Third, the purpose of the attorney fee provision also supports our finding that it covers "all claims involving a common core of facts or based on related legal theories." *Sandholm*, 2012 IL 111443, ¶ 66. See also *Young*, 2015 IL App (1st) 131887, ¶ 104 ("the purpose to be served by the statutory fee-shifting provision" is a "relevant consideration[ ]" in determining "a reasonable fee"). The legislators spoke of protecting exploited workers who, "when Christmas came around, they couldn't even take a dish to their sister's house for dinner." 96th Ill. Gen. Assem., Senate Proceedings, March 18, 2010, at 222 (statement of Senator Delgado). A worker, having been so exploited, would not be in a position to pursue a civil action without the statute's incentive of fee recovery by the prevailing attorney.

¶ 72    In addition, in our prior opinion, we found that the purpose of the attorney fee provision was not to add a new remedy but merely to change the statutory authority for an already existing remedy for wage claims:

> "The amendment in this case did not create the remedy of attorney fees in suits under the Wage Payment Act. Prior to the 2011 amendment, attorney fees could be sought in Wage Payment Act suits, under the Attorneys Fees in Wage Actions Act (705 ILCS 225/1 (West 2010)). The Attorneys Fees in Wage Actions Act provided a process to obtain attorney fees whenever an 'employee brings an action for wages earned and due and owing according to the terms of the employment.' 705 IlCS 225/1 (West 2010). *** Thus, the provision of the 2011 amendment to section 14 of the Wage Payment Act that granted attorney fees merely changed the source of the statutory authority for a remedy that was already available to claimants." *Thomas*, 2015 IL App (1st) 142785, ¶ 72.

In *Thomas*, we found that "the attorney fees provision of the 2011 amendment does not create a new liability, but merely alters the statutory authority for that liability." *Thomas*, 2015 IL App (1st) 142785, ¶ 73.[4]   The fact that this is not a

---

[4] We further found: "Whether the amendment applied or not, defendant could be charged with reasonable attorney fees, either under the Attorneys Fees in Wage Actions Act or under the Wage Payment Act.  The reasonableness of the

new remedy or liability further supports our finding that the recovery is not limited to the Wage Payment Act claim and, instead, encompasses "all claims involving a common core of facts or based on related legal theories." *Sandholm*, 2012 IL 111443, ¶ 66. Thus, we do not find persuasive defendant's argument that fee recovery should be limited only to drafting the Wage Payment Act claim and pursuing it. See also *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 191 (2003) (where all of plaintiff's claims were based on the same compensation agreement, the trial court did not err by including attorney fees billed prior to the inclusion of the claim at issue in the complaint).

¶ 73      Since we do not find persuasive defendant's argument that plaintiff was entitled to recover only time spent specifically working on the Wage Payment Act claim, we also do not find persuasive its claim that the fee petition fails because counsel did not specify in each entry which claim he was working on.

¶ 74      Defendant argues that the disparity between the damage award and the fee award establishes an abuse of discretion by the trial court. "In a fee-shifting case, the fact that the amount of the fees sought exceeds the client's recovery, even by a large margin, does not, standing alone, justify rejection of the amount sought." *Young v. Alden Gardens of Waterford, L.L.C.*, 2015 IL App (1st) 131887, ¶ 104 (citing other cases). In considering a claim that a fee award is

fees would not change regardless of whether the amendment applied; so neither would the amount of the fees." *Thomas*, 2015 IL App (1st) 142785, ¶ 73.

"excessive," a reviewing court may consider whether the party making the claim of excessiveness also made the choice "to aggressively litigate this case, raising virtually every conceivable issue." *Young*, 2015 IL App (1st) 131887, ¶ 106. The *Young* court observed that, "while [the defendant] was entitled to litigate every issue in the case through trial and on appeal, it can hardly be surprised that its 'no holds barred' defense resulted and continues to result in a correspondingly greater expenditure of time by [the plaintiff's counsel]." *Young*, 2015 IL App (1st) 131887, ¶ 85.

¶ 75       In the case at bar, the defendant employer made the choice to litigate, for 10 years, a suit seeking only $47,666 in commissions. In determining whether a fee award is reasonable, courts assess a number of factors, including whether there is a reasonable connection between the fees and the amount involved in the litigation. *Young*, 2015 IL App (1st) 131887, ¶ 106. However, in the case at bar, the connection between the years of attorney time expended and the amount at issue was deemed reasonable by defendant, who cannot be heard to complain now.

¶ 76       Finally, defendant argues that plaintiff was only "one-fourth" successful, because plaintiff sought $47,666.54 in his complaint and received only $9226.52 in damages.[5]  *Young*, 2015 IL App (1st) 131887, ¶ 104 ("the size of

---

[5] Actually, it is closer to one-fifth.

the fee in relation to the benefit to the client" is also a "relevant consideration[ ]" in determining "a reasonable fee"). Success depends, of course, on how you measure it. What plaintiff sought was recognition that he was an employee and payment for his work. At the bench trial and on appeal, the primary issue was whether plaintiff was, or was not, defendant's employee. *Thomas*, 2015 IL App (1st) 142785, ¶ 43. For his commission, plaintiff asked for 20% of the gross contracts he obtained, whereas the trial court awarded him 20% of the net after subtracting for materials and other costs. Nonetheless, counsel succeeded with the primary issue at trial and on appeal, and plaintiff will now receive the money and satisfaction of being paid for his work, which is the point of the Wage Payment Act. Thus, we cannot find that this is a basis for finding an abuse of discretion by the trial judge.

¶ 77     In sum, we are not persuaded by defendant's arguments that the trial court abused its discretion in determining the fee award, as we instructed it to do on remand.

¶ 78                                    CONCLUSION

¶ 79     For the foregoing reasons, we cannot find that the trial court erred by denying defendant's petition for substitution of judge for cause or its request for documents. We also cannot find that the trial court abused its discretion in

determining reasonable attorney fees and costs.  Thus, we affirm the trial court's orders.

¶ 80            Affirmed.