THIRD DIVISION
MARCH 28, 2007

No. 1-06-0993

| | | |
|---|---|---|
| CAREER CONCEPTS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 L 3087 |
| | ) | |
| SYNERGY, INC., | ) | The Honorable |
| | ) | Paddy H. McNamara, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Synergy, Inc., appeals from the judgment of the trial court in favor of plaintiff

Career Concepts, Inc. (CCI), on its breach of contract action.  On appeal, defendant contends

that:  (1) the trial court erred in allowing the case to proceed to a trial on the merits; (2) the

court's liability finding was against the manifest weight of the evidence; and (3) the court abused

its discretion by awarding plaintiff attorney fees.

Briefly stated, plaintiff, an employee placement agency, filed the underlying action in

order to recover a placement fee allegedly owed by defendant, a professional employer

organization (PEO).[1]  Plaintiff claimed that the parties had a valid contract and defendant was in

breach thereof because it failed to pay a placement fee after hiring Diane Takacs, an individual

previously connected with plaintiff.  In response, defendant argued that the purported contract

was invalid because John Driscoll, the signator, did not have authority to enter into contracts on

---

[1]A PEO provides employee-related services for smaller businesses.

1-06-0993

the company's behalf. Moreover, defendant maintained that Diane Takacs was hired as a result of wholly unrelated circumstances.

Prior to trial, on June 17, 2005, defendant filed an "Emergency Motion *in Limine*, for Directed Verdict and Entry of Judgment" on the basis that plaintiff violated Supreme Court Rule 213(f) (210 Ill. 2d R. 213(f)) by failing to adequately and completely disclose its intended witnesses. Specifically, defendant argued that plaintiff's three witness disclosures were inadequate and incomplete because: (1) Diane Takacs' address was not provided and her testimony was not divulged in appropriate detail; (2) the testimony of the remaining two witnesses, Amber Campbell and Keri Burton, was not divulged at all; and (3) John Driscoll was not listed as a potential witness. Accordingly, defendant requested that the court bar plaintiff from presenting any witnesses at trial. In the alternative, defendant argued that plaintiff could not support its claim solely based upon the witnesses and minimal subjects disclosed; therefore, the court should direct a verdict and enter judgment in defendant's favor. After considering the motion, the trial court granted plaintiff 28 days to supplement its witness disclosures and comply with Rule 213.

On September 29, 2005, defendant filed a "Renewed Motion *in Limine*, for Directed Verdict and Entry of Judgment" on the basis that plaintiff failed to follow the trial court's prior order to supplement its witness disclosures. At the subsequent hearing, plaintiff provided timely-filed copies of its supplemental witness disclosures. Plaintiff maintained that it had previously faxed the document to defendant. The trial court ultimately denied defendant's motion.

Then, on November 23, 2005, defendant filed an "Emergency Motion to Dismiss"

-2-

pursuant to sections 13.70 and 15.85 of the Business Corporation Act of 1983 (Act) (805 ILCS 5/13.70, 15.85 (West 2004)). Defendant argued that plaintiff, an Indiana corporation, was not registered or authorized to do business as a foreign corporation in Illinois and therefore could not file the underlying lawsuit. Without ruling, the trial court took the motion under advisement and proceeded to trial.

At trial, Amber Campbell testified that she was employed by plaintiff as an account executive in 2001. Campbell stated that she initiated the relationship with defendant by "cold-calling" the company, and, after describing the nature of her call, she was directed to Driscoll. Driscoll stated that defendant was interested in hiring sales personnel; therefore, Campbell forwarded a contract to him via facsimile. Campbell testified that she asked whether Driscoll had authority to sign the contract. Driscoll responded in the affirmative and signed and returned the contract.

Under the terms of this standard contract, if defendant hired a candidate sent by plaintiff within one year, it was required to pay a placement fee, which was 30% of the hired candidate's first year compensation, including bonuses. In addition, the contract stated that, in the event that plaintiff was forced to pursue collection remedies, defendant agreed to "pay all expenses thereof, including reasonable attorney's fees."

Thereafter, in 2001, Campbell sent Takacs to interview with Driscoll and Jon Skulborstad, defendant's founder and president. Campbell spoke directly to Skulborstad after the interviews, and he indicated that the company was not interested in hiring Takacs at that time. Takacs subsequently ended her relationship with plaintiff. Approximately two years later, she

contacted plaintiff again for employment assistance. At that time, the company learned that defendant had hired Takacs later in 2001.

On cross-examination, Campbell testified that Driscoll signed the contract at issue in his capacity as hiring manager. Campbell admitted, however, that she did not know whether Driscoll actually was the hiring manager and she did not attempt to verify his title or position. She further admitted that she was never told by anyone within the company that Driscoll had contract-signing or hiring authority. When Campbell spoke to Skulborstad, she never mentioned the contract between the parties nor inquired into Driscoll's position or authority. Campbell stated that plaintiff was no longer in business.

Arnie Eastburn, plaintiff's owner and president, testified that Campbell was responsible for the formation and oversight of the relationship with defendant. In 2002, Eastburn called Skulborstad, whom he had known for years, to inquire whether he would be interested in potentially hiring any candidates. According to Eastburn, Skulborstad responded that he would be interested if there was a suitable candidate, and Eastburn alerted Skulborstad to the existing contract between their companies. Then, in 2003, after learning that Takacs had been hired by defendant in 2001, Eastburn sent Skulborstad an invoice for the outstanding placement fee of $30,000 based on the belief that Takacs earned $100,000 in her first year. In response, Skulborstad called Eastburn, announcing his refusal to pay the fee because the parties did not have a contract for services.

On cross-examination, Eastburn admitted that he never contacted Skulborstad when the parties entered into the contract at issue. He further admitted that he did not attempt to verify

whether Driscoll had contract-signing authority. Eastburn denied that plaintiff conducted business in Illinois, but admitted that plaintiff worked with Illinois residents to find employment positions in Illinois "on a regular basis." Eastburn acknowledged attending a "couple" of industry meetings in Illinois to "drum up" business. Eastburn further admitted that plaintiff was not registered to conduct business in Illinois and never paid franchise fees or taxes to the Illinois Secretary of State.

John Driscoll testified that he was employed by defendant in 2001 as a sales manager. Driscoll recalled being contacted by Campbell in early 2001 to begin a relationship between plaintiff and defendant. Driscoll stated that he presented the contract at issue to Skulborstad and was given authority to sign it. Driscoll recalled that Takacs was subsequently sent as a candidate, and he and Skulborstad interviewed her, but she was not hired. Driscoll further stated that, while he was employed by defendant, the company paid a fee to hire Melissa Donahue through a search firm. Driscoll left defendant's company around June 1, 2001.

On cross-examination, Driscoll admitted that he never held the position of hiring manager with defendant and did not have contract-signing authority. Driscoll further admitted that he signed the contract at issue on behalf of defendant as its hiring manager; however, he denied that this was a misrepresentation. Driscoll admitted that, prior to leaving defendant's company without any advance notice, he was in an altercation with Skulborstad. He further admitted that he attempted to recruit defendant's employees away from the company. Driscoll, however, stated that he did not harbor any ill-will toward defendant.

On redirect examination, Driscoll maintained that Skulborstad authorized him to sign

another contract in addition to the one at issue. More specifically, the contract was for a sales presentation. On re-cross-examination, Driscoll admitted that he was required to seek Skulborstad's approval before signing the sales presentation contract. Driscoll also admitted that Melissa Donahue was hired as a temporary employee.

Diane Takacs had no recollection of Campbell, but someone at plaintiff's company arranged an interview for her at defendant's company in February 2001. Takacs only recalled interviewing with Driscoll. She denied that she had a follow-up interview with Skulborstad. When defendant did not hire her initially, Takacs ended her relationship with plaintiff. Takacs admitted that she was hired by defendant several months later. However, immediately prior to accepting a position with defendant, Takacs was employed by another company. While employed there, she made a sales presentation to defendant that Skulborstad attended. Shortly thereafter, Joe Fife, defendant's director of sales, contacted Takacs and asked whether she would be interested in working for defendant. Takacs subsequently interviewed with Fife and accepted a position with defendant in July, 2001. Her base salary was approximately $70,000, plus bonus. Ultimately, Takacs was compensated $89,000 in total for her first year. On cross-examination, Takacs stated that she did not believe plaintiff contributed to her hiring.

Jon Skulborstad testified that, during the time frame in question, he had complete hiring and firing authority and was the only employee with contract-signing authority. Until abruptly leaving the company, Driscoll was a sales manager for defendant. In that capacity, Driscoll was required to find potential candidates for sales positions; however, only Skulborstad could hire an acceptable candidate. Driscoll never held the position of hiring manager. Driscoll was aware of

defendant's hiring and firing and contract-signing restrictions, as well as the company's policy against using placement firms to find full-time employees because of the accompanying placement fees. Skulborstad admitted that defendant used temp firms to hire temporary employees, which required a fee; however, Skulborstad maintained that using temp firms was the only method for obtaining temporary employees. He further stated that some temporary employees had become full-time employees, such as Melissa Donahue. Skulborstad admitted that he authorized Driscoll to hire Donahue as a full-time employee, but only after she demonstrated satisfactory performance in her temporary capacity.

Skulborstad stated that he had known Eastburn for years, and that the pair would see each other at industry functions at least once per year. Skulborstad recalled receiving a phone call from Eastburn regarding his company when it was in its infancy. Skulborstad relayed his company's policy against using placement firms, but told Eastburn to contact him if there was an exceptional candidate. Eastburn never contacted Skulborstad after the parties allegedly entered into the contract at issue. Skulborstad first became aware of the alleged contract in 2003 when he received Eastburn's invoice. Skulborstad admitted that he authorized Fife to hire Takacs in 2001 based on her sales presentation while employed elsewhere. Skulborstad had no recollection of being introduced to Takacs by Driscoll or interviewing her earlier in the year. Because of defendant's policy against using placement firms, he never would have hired Takacs if he thought she was connected to plaintiff. Takacs was employed by defendant for a little over one year and left the company on good terms. Skulborstad denied authorizing Driscoll to sign the contract at issue. He did, however, recall authorizing Driscoll to sign one unrelated sales

contract. Further, Skulborstad denied ever speaking with Campbell about an interview with Takacs.

Joe Fife testified that, as director of defendant's sales, he was Driscoll's direct supervisor. Fife reiterated that Skulborstad had sole contract-signing authority. Fife stated that Driscoll neither held the position of hiring manager nor had contract-signing or hiring authority while working under him. Moreover, Driscoll never told Fife that he had signed a contract with plaintiff. Fife reiterated defendant's well-known policy against using placement firms for full-time employees. Fife recalled the circumstances of Takacs' hiring in the same manner as Skulborstad.

The trial court ultimately found in favor of plaintiff. During defendant's closing argument, the court advised defense counsel to limit his argument to the issue of damages because it had already determined that defendant was liable under the contract. Specifically, the trial court found that Driscoll had apparent authority to enter into the contract at issue on defendant's behalf. Moreover, the trial court announced that Skulborstad and Takacs were not credible witnesses. In particular, the court determined that both individuals were lying when they denied that the initial interview took place while Takacs was involved with plaintiff. The court awarded plaintiff damages in the amount of $26,700[2] plus attorney fees, but denied prejudgment interest. The court then ordered plaintiff to file its petition for attorney fees.

Plaintiff subsequently filed its fee petition in the amount of $14,730,70 for attorney fees

---

[2]This amount was calculated based on 30% of Takacs' first year earnings of $89,000 in salary and bonuses.

and costs. Defendant responded by filing a memorandum in opposition to the fee petition, arguing that plaintiff was not entitled to recover because it was unsuccessful in proving the entire amount of requested damages in the underlying complaint, and the petition failed to include the information necessary to satisfy its burden for proving that the fees were reasonable. In addition, defendant filed a motion for a ruling on its prior motion to dismiss pursuant to plaintiff's violation of sections 13.70 and 15.85 of the Act.

According to defendant, during the hearing, the trial court advised plaintiff's counsel to withdraw the contingency fee agreement that he previously entered with his client because it would constrain the court's ability to award attorney fees.[3] Plaintiff's counsel eventually agreed. The trial court then reviewed each entry of the fee petition, striking an undisclosed number of entries that apparently were too vague or excessive. Ultimately, the trial court denied defendant's motion to dismiss and entered a final order for $39,275[4] in total damages in favor of plaintiff. Defendant subsequently filed motions to reconsider all of the court's judgments, including those related to the pretrial motions. According to the parties, following a brief hearing, the court denied the motions to reconsider.[5] This timely appeal followed.

---

[3]The record on appeal contains a bystander's report of the trial (see 210 Ill. 2d R. 323); however, the record does not contain a transcript, or acceptable substitute, of the posttrial proceedings.

[4]Plaintiff was therefore awarded $12,575 in attorney fees.

[5]The record does not contain a transcript or an acceptable substitute of this proceeding. See 210 Ill. 2d R. 323.

1-06-0993

Defendant first argues that the trial court committed reversible error by denying its pretrial motions *in limine*, for directed verdict and entry of judgment on the basis that plaintiff failed to timely and adequately disclose witnesses in accordance with Rule 213. Because a trial court's ruling on a motion *in limine* is subject to reconsideration throughout the trial, the movant must object to the evidence when it is introduced at trial otherwise the issue is waived for purposes of appeal. Ford v. Herman, 316 Ill. App. 3d 726, 736 (2000). Although defendant filed the pretrial motions and filed a posttrial motion to reconsider, defense counsel failed to object to the witnesses' testimony when offered at trial and, therefore, did not preserve the issue for appeal. *Cf.* Jarke v. Jackson Products, Inc., 282 Ill. App. 3d 292, 295 (1996) (despite the defense counsel's failure to contemporaneously object to witness testimony, the issue was sufficiently preserved where the defendant filed a pretrial motion *in limine* and the defense counsel made a belated objection to the testimony during the course of trial). Accordingly, we find that defendant waived this issue for purposes of our review.

Notwithstanding defendant's waiver, we would affirm the trial court's denial of defendant's motions *in limine*, for directed verdict and entry of judgment because plaintiff sufficiently complied with Rule 213(f).

Defendant next contends that the trial court erred in denying its motion to dismiss based on plaintiff's violation of sections 13.70 and 15.85 of the Act. Plaintiff responds that defendant failed to satisfy its burden of proving that plaintiff was transacting business in Illinois in violation of the Act.

Pursuant to the Act, in order to transact business in Illinois, a foreign corporation must

obtain authority from the Secretary of State. See 805 ILCS 5/13.05 (West 2004). Further, the Act posits that, unless it obtained the requisite authority, a foreign corporation may not maintain a civil action in any Illinois court. See 805 ILCS 5/13.70 (West 2004). In addition, if a corporation is required to pay a "franchise tax, license fee, penalty, or interest" under the Act and has failed to do so, the corporation may not maintain a civil action. See 805 ILCS 5/15.85 (West 2004). The defendant bears the burden of proving that a corporation transacted business in violation of the Act. Subway Restaurants, Inc., v. Riggs, 297 Ill. App. 3d 284, 289 (1998). A foreign corporation may engage in occasional and isolated transactions in Illinois without being required to obtain authorization. Riggs, 297 Ill. App. 3d at 289. Moreover, a foreign corporation need not obtain authorization if it simply conducts interstate commerce. Riggs, 297 Ill. App. 3d at 289.

In the instant case, defendant failed to satisfy its burden of demonstrating that plaintiff violated the Act. Defendant attached an affidavit to its motion to dismiss indicating that an online search and telephone confirmation revealed that plaintiff was a corporation registered in Indiana, but not listed as a foreign corporation authorized to conduct business in Illinois. Defendant's burden of proof, however, is not satisfied with this information alone. See Mass Transfer, Inc., v. Vincent Construction Co., 223 Ill. App. 3d 746, 751-52 (1992). Defendant additionally argues that the trial evidence "indisputably" demonstrated that plaintiff was regularly transacting business in Illinois as an unauthorized foreign corporation. At trial, Eastburn testified that his Indiana company was not registered to conduct business in Illinois. However, he stated that plaintiff assisted Illinois residents with finding employment in Illinois on a regular basis and

that he attended industry meetings to solicit business "a couple of times." We disagree that this evidence "indisputably" satisfies defendant's burden. Rather, defendant has merely demonstrated that plaintiff worked with Takacs in Illinois and some unknown number of other individuals. Without more, we cannot assume that plaintiff violated the Act simply based on Eastburn's use of the words "regular basis."

Defendant additionally contends that the trial court erred in finding it liable for breach of contract. Specifically, defendant argues that the contract at issue was invalid because Driscoll did not have the authority, apparent or otherwise, to enter into it on defendant's behalf.

An agent may bind his principal by acts which he appears authorized to perform. Lundberg v. Church Farm, Inc., 151 Ill. App. 3d 452, 461 (1986). The scope of an agent's purported authority is a question of fact; therefore, we will reverse the court's finding on the issue only if it is against the manifest weight of the evidence. Progress Printing Corp. v. Jane Byrne Political Committee, 235 Ill. App. 3d 292, 306 (1992). Only when an opposite conclusion is apparent or the finding appears unreasonable, arbitrary or not based on the evidence will a finding be deemed against the manifest weight of the evidence. Amcore Bank, N.A., v. Hahnaman-Albrecht, Inc., 326 Ill. App. 3d 126, 135 (2001).

Apparent authority arises when the principal knowingly permits the agent to assume authority or when he holds his agent out as possessing authority, and " 'a reasonably prudent man, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.' " Lundberg, 151 Ill. App. 3d at 461, quoting Hofner v. Glenn Ingram & Co., 140 Ill. App. 3d 874, 882 (1985). In order to prove the existence of apparent authority, the

plaintiff must demonstrate that: (1) the principal consented to or knowingly acquiesced in the agent's exercise of authority; (2) the third person reasonably concluded, based on the actions of the principal and agent, that the party was an agent of the principal; and (3) the third person justifiably relied on the agent's apparent authority to his detriment. Letsos v. Century 21-New West Realty, 285 Ill. App. 3d 1056, 1065 (1996).

In the case at bar, we determine that defendant remains liable under the contract. Review of the record demonstrates that, prior to submitting the contract to Driscoll, Campbell was assured that he was authorized to sign on behalf of defendant. Driscoll admitted that he was not a hiring manager, despite signing the contract as such; however, he concluded that he did not misrepresent himself. He maintained that he received authorization from Skulborstad. In addition, Driscoll interviewed Takacs and then forwarded her to Skulborstad for another interview. After the interviews, Campbell contacted Skulborstad directly and learned that they were not interested in hiring Takacs at that time. Moreover, Skulborstad admitted that he expressly authorized Driscoll to enter into at least one contract and to hire Melissa Donahue as a full-time employee. Further, although the exact timing of the conversation is unclear, Skulborstad and Eastburn spoke at some point about plaintiff's services and, at the very least, Skulborstad told Eastburn to forward exceptional candidates to defendant.

We recognize that defendant presented contradicting evidence; however, the trier of fact determines the credibility of the witnesses, resolves conflicts in the evidence and attaches relevant weight to the witness testimony. Seldin v. Babendir, 325 Ill. App. 3d 1058, 1063 (2001). The trial court specifically announced that Skulborstad and Takacs did not testify

credibly. Furthermore, we may not reverse a judgment merely because the trial court could have drawn different inferences and conclusions from the conflicting testimony. See Rainey v. City of Salem, 209 Ill. App. 3d 898, 905 (1991). Despite the delay in Takacs' actual hiring, in that she was no longer affiliated with plaintiff and worked for an unrelated company at the time, the contract remained in effect. According to its terms, "service fees are on a contingency basis and are payable only if a candidate enters into a service relationship with [defendant] within one year after our most recent communication relating to the candidate." There is no dispute that Takacs was hired within one year of Campbell and Driscoll's first communication. Accordingly, we do not find that a different result is clearly apparent or that the trial court's judgment, based on the evidence, was palpably erroneous and wholly unwarranted or arbitrary and unsubstantiated by the evidence. See Amcore Bank, N.A., 326 Ill. App. 3d at 135.

Defendant finally contends that the trial court erred in awarding plaintiff attorney fees. The decision whether to award attorney fees is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Med + Plus Neck & Back Pain Center, S.C. v. Notfsinger, 311 Ill. App. 3d 853, 861 (2000). Usually parties are responsible for their own attorney fees; however, if expressly authorized by statute or by agreement, the court may award attorney fees so long as they are reasonable. Collins v. Hurst, 316 Ill. App. 3d 171, 173 (2000).

Defendant relies on Med + Plus to argue that the court's award was erroneous because plaintiff failed to prevail on all aspects of its complaint. However, the instant case is distinguishable because no evidence was presented that the parties' had a fee-shifting provision nor can defendant reasonably argue that the court's reduction in award in compliance with the

terms of the contract and refusal to award prejudgment interest were "significant issues" in the case. Med + Plus, 346 Ill. App. 3d at 861 (defining a prevailing party for purposes of a fee-shifting provision as one that is successful on any significant issue).

Notwithstanding, we must reduce the award pursuant to the terms of the contingency fee agreement between plaintiff and its attorney. The record demonstrates that plaintiff and its attorney agreed to a contingency fee arrangement, and plaintiff does not dispute that the agreement called for a one-third contingency fee. In the majority of case law analyzing contingency fees, courts are concerned that contingency fees are unreasonable because they would allow for the award of excessive fees. See, *e.g.*, Collins, 316 Ill. App. 3d at 173; Blankenship v. Dialist International Corp., 209 Ill. App. 3d 920, 927 (1991) (courts should consider contingency fee agreements as only one factor in determining whether the attorney fees are reasonable). The instant case is unique, however, in that plaintiff was awarded attorney fees in excess of its contingency fee agreement. We presume that the contingency fee agreement between plaintiff and its attorney was reasonable and find it enforceable. Consequently, the trial court erred in allowing plaintiff's attorney to unilaterally waive the contingency fee in favor of the court's own award. This court has a duty to guard against the collection of excessive attorney fees, and we will generally enforce a reasonable contract between an attorney and his client. See Corcoran v. Northeast Illinois Regional Commuter R.R. Corp., 345 Ill. App. 3d 449, 452 (2003). Accordingly, we reduce plaintiff's award of attorney fees to one-third of its damage recovery pursuant to the contingency fee agreement. Therefore, because plaintiff recovered $26,700, it is entitled to $8,900 in attorney fees.

1-06-0993

Accordingly, we affirm the judgment of the circuit court of Cook County, but modify the attorney fee award in accordance herewith.

Affirmed; modified as instructed.

KARNEZIS, J., and CUNNINGHAM, J., concur.