2021 IL App (2d) 200244-U
No. 2-20-0244
Order filed February 23, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PEAK EXTERIORS, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Boone County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-AR-42 |
| | ) | |
| AMY GOEBEL, | ) | Honorable |
| | ) | Ronald A. Barch, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice Bridges and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1 *Held*: (1) The trial court's finding that plaintiff substantially performed its obligations under the parties' contract in a workman-like manner was not against the manifest weight of the evidence; (2) defendant forfeited her contract-ambiguity argument by failing to raise it in the trial court or adequately developing it on appeal; (3) the trial court did not abuse its discretion in failing to exclude one of plaintiff's witnesses from the courtroom; and (4) the trial court's finding that plaintiff did not violate the Consumer Fraud and Deceptive Business Practices Act was not against the manifest weight of the evidence.

¶ 2 Plaintiff, Peak Exteriors, LLC, filed a complaint for breach of contract in the circuit court of Boone County against defendant, Amy Goebel, alleging that defendant failed to compensate it for replacing the roof on defendant's home. Defendant filed a counter complaint which, as

amended, alleged breach of contract, breach of warranty, and violations of the Home Repair Remodeling Act (815 ILCS 513/1 *et seq.* (West 2016)), the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2016)), and the Home Repair Fraud Act (815 ILCS 515/1 *et seq.* (West 2016)). The matter proceeded to arbitration, following which the arbitrators found in plaintiff's favor on both its complaint and on defendant's counter complaint. Defendant rejected the award of the arbitrators and a bench trial followed. After considering the evidence presented by the parties, the trial court entered judgment in plaintiff's favor in the amount of $14,983.56 plus costs of suit on its complaint and against defendant on her counter complaint. Upon defendant's motion to reconsider, the court reduced the award in plaintiff's favor to $13,108.60 plus costs of suit. Defendant subsequently filed a notice of appeal. We affirm.

¶ 3                                I. BACKGROUND

¶ 4     Early in September 2017, Austin Jacobsen, a field manager for plaintiff, encountered defendant while looking for homes with hail damage. Jacobsen approached defendant, and the two began a conversation. As a result of their discussion, defendant contacted her insurance company, AAA Insurance. A couple of weeks later, Jacobsen returned to meet with the insurance adjuster who was present to inspect the damage to defendant's roof. The insurance adjuster prepared an estimate of the amount to "repair or replace the damaged items or structures noted by the adjuster at the time of the inspection." The replacement cost value estimated by the insurance adjuster was $18,069.15.

¶ 5     After defendant received the estimate from her insurance company, she contacted Jacobsen. On September 28, 2017, Jacobsen and his boss, John Vecchio, met with defendant to review paperwork and sign a contract for a full roof replacement on defendant's home. The contract, which was for a total of $17,864.02, provided that plaintiff would "tear off" the existing

shingles and underlayment and "replace" the underlayment, ice and water shield, flashings, and plumbing boots.[1] The contract also provided for the installation of shingles, roof vents, and fascia. Regarding the type of shingle, the contract required plaintiff to "match existing." As to the color of the shingle and the roof vents, the contract required plaintiff to "match." In addition, the contract required plaintiff to obtain a building permit "if applicable." Defendant signed the contract on her own behalf. Vecchio signed the contract as plaintiff's representative.

¶ 6    The building materials were delivered in advance to defendant's property. A few days after the delivery, plaintiff's crew began replacing defendant's roof. The work took two days. Defendant refused to pay plaintiff the amount due under the contract for the work performed. Accordingly, on November 13, 2017, plaintiff filed a complaint against defendant in the circuit court of Boone County for breach of contract. Defendant subsequently filed a counter complaint, which she later amended, alleging breach of contract, breach of warranty, and violations of the Home Repair Remodeling Act (815 ILCS 513/1 *et seq.* (West 2016)), the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2016)), and the Home Repair Fraud Act (815 ILCS 515/1 *et seq.* (West 2016)). The matter proceeded to arbitration. The arbitrators found in plaintiff's favor on both its complaint and on defendant's counter complaint. Defendant rejected the award of the arbitrators, and a bench trial was held on October 28, 2019.

¶ 7    Before the trial began, defendant's attorney made a motion to exclude witnesses. The following exchange then occurred:

---

[1] The $205.13 difference between the insurance adjuster's estimate and the contract price was due to gutter work that was not part of the contract.

"MS. VECCHIO [Plaintiff's attorney]: Judge, I have John Moore. He's an owner of Peak Exteriors as well and then Austin Jacobsen; he will be our first witness.

THE COURT: Okay.

MR. CHOSTNER [Defendant's attorney]: I thought Mr. Moore split off from Peak Exteriors Rockford and is now operating out of Peak Exteriors in the burbs.

THE COURT: I have no idea.

MS. VECCHIO: I don't know why that matters. It's still Peak Exteriors. He's the owner of Peak Exteriors with my brother.

MR. CHOSTNER: If it's a different—

THE COURT: I have a Peak Exteriors, LLC.

MS. VECCHIO: Right.

THE COURT: If that's a party and an owner, that person will be able to stay.

MR. CHOSTNER: I understand, judge. I'm just wondering if perhaps when they split, if he formed another LLC.

THE COURT: Has there been a split, or are they still part of—

MS. VECCHIO: Peak Exteriors, LLC.

THE COURT: I can't answer that question without representation from one party to the other as to what the current status is for Peak Exteriors. If somebody in the courtroom is an owner, then they can stay. If they're not, they'll have to leave.

MS. VECCHIO: Right. They're both owners, Judge."

The following evidence was then adduced at the trial.

¶ 8        Jacobsen testified that it took two days for the construction crew to replace defendant's roof. Jacobsen was present the entire time the crew was working on the project. Jacobsen identified

a group of photos showing the old roof and the new roof. At no time during construction or upon completion did defendant approach Jacobsen to indicate that there was a problem with the color or installation of the roof. When the project was done, Jacobsen requested payment from defendant. Defendant never tendered any payment. Jacobsen acknowledged that the ice and water shield "was short just a bit" at the far back left slope of the roof. He also admitted that the insurance estimate contained line items for detaching and resetting gutters, but this was not done.

¶ 9     Moore testified that he has been a "member" of plaintiff for almost two years. Defense counsel moved to exclude Moore as a witness on the basis that he was not a member of plaintiff at the time the contract at issue was executed. The trial court overruled the motion on the basis that Moore is currently a member of the business. Moore then testified that he was familiar with the contract executed between the parties. In particular, he testified that he sent the material order list to the supply company, scheduled the delivery of materials, sent the labor order request to the roofing subcontractor, and coordinated with the field managers. Moore testified that he does not order materials based on the insurance documents because they are usually incorrect. Instead, he employs a satellite-measurement service to obtain the roof measurements. Moore explained that this allows him to order the materials "based on the actual project." Moore testified that plaintiff would not bill the insurance company for work not actually performed.

¶ 10     Moore testified that he ordered the shingles for defendant's project. The original shingles on defendant's roof were CertainTeed Landmark, 30-year shingles. Plaintiff replaced those shingles with GAF Timberline architectural-style shingles in pewter gray, which has a 50-year life expectancy. In Moore's opinion, the GAF shingle is a better shingle than the shingle previously on defendant's roof. Moore also testified that it is not necessary to detach and remove the gutters to install a new gutter apron. Moore acknowledged that plaintiff did not obtain a building permit

for defendant's project until after the roof had been completed. Moore attributed the failure to get a permit earlier to "an oversight."

¶ 11    On cross-examination, Moore testified regarding the permitting process. He noted that once a permit is obtained, an inspector will either physically come out to the location or ask for photos at various stages of the project's process. Moore testified that the first time plaintiff was aware of defendant's complaint regarding the color of the shingle was when plaintiff asked for payment.

¶ 12    Vecchio testified that he is an owner of plaintiff. According to Vecchio, at no time did defendant provide him with the name or manufacturer of her existing shingle. Defendant did allow Vecchio to remove a piece of shingle to try and match it. Vecchio took the sample to plaintiff's supplier and obtained the closest match. Defendant agreed to this procedure. After the roof was complete, defendant indicated that she did not like the color of the shingle that had been installed. Vecchio testified that defendant did not voice any concerns about the color of the shingles while the work was being performed. Further, she did not notify plaintiff of any problems with the roof other than the color. Vecchio testified that at no time did plaintiff receive any payment from defendant.

¶ 13    Vecchio was aware of the shortage of the ice and water shield. He testified that to rectify the problem, a "small portion" of the roof's shingles would have to be removed. The ice and water shield can then be applied and the shingles relaid. Vecchio estimated the cost of the work at $880. Vecchio testified that the removal and replacement of the fascia was to be completed after the roof, but work on that phase was not done due to the payment dispute that arose between the parties. Vecchio also acknowledged that Peak did not obtain a building permit until October 20, 2017, but noted that the county allowed plaintiff to "pull a permit late."

¶ 14    Defendant testified that her house is located in Winnebago County. Defendant related that she told Jacobsen that she wanted a shingle that is "exactly what's on [her] roof right now." Jacobsen told defendant that his boss would be able to match the shingles. Later, when Jacobsen and Vecchio met defendant to sign the contract, she reiterated that she wanted "the exact same shingles that were on the roof." Defendant referred Jacobsen and Vecchio to the builder of the house to obtain information about the type of shingle on the roof.

¶ 15    Defendant testified that the materials for the project were delivered to her home on a Wednesday. The work began the following Monday, October 16, 2017. Defendant was present the entire time the work was going on except for an hour and a half on the first morning of work. Defendant testified that she repeatedly told Jacobsen during the installation that the new shingles did not match the old shingles. In addition, at no time did defendant observe the gutters being removed. After the roof was completed, defendant spoke to Jacobsen and Vecchio multiple times regarding payment. On cross-examination, defendant acknowledged that plaintiff installed a roof on her home and that she did not submit any payment to plaintiff.

¶ 16    John Mazanowicz testified that he is a building inspector for Winnebago County. Among Mazanowicz's duties is reviewing the installation of roofs. Mazanowicz noted that Winnebago County has adopted the 2015 International Residential Code which requires gutter aprons and drip edging in addition to ice and water shield. Mazanowicz testified that roofing contractors are required to secure building permits before commencing work. Depending upon circumstances, inspections may occur before the shingles go on to confirm installation of the required ice and water shield in addition to gutter aprons and drip edging. Mazanowicz further testified that depending upon the circumstances, the building inspector may rely upon photographs of work in progress or completed work to satisfy inspection requirements. Mazanowicz acknowledged that

photographs do not show what occurred beneath the shingles. He explained, however, that weather may demand immediate installation of a roof to avoid damage to the subject home. Mazanowicz further testified that although it is a violation of the permitting process, from time to time builders will seek a permit, inspection, and final approval after completion. While a builder will likely be fined, the permitting, inspection, and approval process may nonetheless proceed based upon photographic evidence and visual inspection.

¶ 17    Plaintiff did not secure a permit for defendant's project until October 20, 2017. Mazanowicz received photos of defendant's project on April 25, 2019, and was asked to do a "final inspection." Mazanowicz testified that he did not find any ice or water shield deficiencies from the photos that were tendered by plaintiff with respect to defendant's home. Moreover, Mazanowicz testified that defendant's house passed inspection. Mazanowicz further testified that there is no prohibition against reusing existing gutter aprons or drip edging.

¶ 18    Gary Paris was presented as an opinion witness on defendant's behalf. Paris inspected Goebel's home and found fault with the work performed by plaintiff, including the following: (1) plaintiff could have easily satisfied the contract's "match" requirement by securing an Independent Testing Evaluation Laboratory (ITEL) analysis to identify the make, color, and style of defendant's original roof; (2) plaintiff should have performed all of the work specifically delineated in the AAA appraisal; (3) plaintiff should have removed and replaced all existing flashing with new flashing; (4) plaintiff should have removed and replaced the gutter apron, which necessitates and requires the removal and reinstallation or replacement of all gutters; (5) plaintiff should have installed two rows of ice and water shield along all edges of the roof; and (6) plaintiff should have installed ice and water shield at least five inches up the base of any wall that vertically intersects

the roof. According to Paris, the only way to remedy the color variation and installation deficiencies he identified is to remove and replace the roof in its entirety.

¶ 19    On November 8, 2019, the trial court entered a written memorandum of decision and order. Based on the evidence presented at trial, the court found that plaintiff substantially performed the subject contract in a workman-like manner. Regarding the issues of the shingles, the court noted:

> "When it comes to shingles and fascia, the contract called for a color 'match.' Though [defendant] perhaps envisioned a specific make, color and style, the contract between the parties did not. The doctrine of substantial performance necessarily allows for minor deviation [*sic*]. [Defendant] received a completely new roof, albeit one consisting of shingles with a color shade and shape different than her original roof. In the court's view, however, the variance in shingle color or shade and shape is slight and inconsequential. The before and after color photos confirm the same ***. The court notes further that the variation between the old roof and new roof is less apparent depending upon light, angle and perspective."

The court further concluded that defendant received a fully functional roof, albeit one with "shortcomings and deficiencies." In this regard, the court pointed out that the roof as installed passed inspection and there was no evidence that the roof leaks or has ice-related problems, such as mold or rot. The court acknowledged that plaintiff did not perform certain aspects of the contract related to the ice and water shield, gutters, fascia, and flashing, but noted that the parties presented competing testimony regarding code requirements, industry customs, and best practices. Ultimately, the court determined that an adjustment to the contract price was warranted because of the missing ice and water shield, the failure to detach and reset the gutters, the failure to remove and replace the fascia, and the decision to reuse instead of replace flashing. As such, the court

entered judgment in favor of plaintiff in the amount of $14,983.56. The court denied plaintiff's demand for attorney fees but awarded costs of suit. The court ruled against defendant on all three counts of her counter complaint.

¶ 20    On December 6, 2019, defendant filed a motion to reconsider. On February 20, 2020, following argument, the court granted the motion in part and denied it in part. The court reiterated its view that defendant "overall received a roof that's performing," "functional," and "approved by the city [*sic*]." Nevertheless, the court reduced the judgment amount to $13,108.60 plus costs of suit. The reduction represented a credit to defendant for (1) certain replacement cost value (versus the actual cash value used by the court in its November 8, 2019, decision and order) since plaintiff will have to pay someone to perform the work that was not done and (2) the court's failure to account for plaintiff not installing a "drip edge." The court also reiterated that it did not find fraud on the part of plaintiff. The court explained that fraud "involves more than the mere fact that a [party] promised something and then failed to do it." The court acknowledged that "there was a failure to provide work that [plaintiff] contracted for, but there still was workmanlike performance *** [and] a roof that is functional, that was approved by the city [*sic*]." On March 20, 2020, defendant filed a notice of appeal.

¶ 21                              II. ANALYSIS

¶ 22    On appeal, defendant disputes the trial court's finding that the manner in which plaintiff carried out its obligations under the contract constituted substantial performance in a workman-like manner. She also contends that the contract at issue is ambiguous and should therefore be construed against plaintiff, the drafter of the document. In addition, defendant challenges the trial court's decision not to exclude Moore from the courtroom and its ruling that plaintiff's performance of the contract did not constitute fraud.

¶ 23    Prior to addressing the merits of defendant's arguments, we note that plaintiff has not filed a brief in this appeal. In such circumstances, the reviewing court has three options: (1) if justice so requires, actively seek bases for sustaining the judgment of the trial court; (2) when the record and issues are simple, decide the case on the merits; or (3) reverse when the appellant's brief shows *prima facie* error. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Here, the record and issues are simple and the claimed errors can be decided without the aid of an appellee's brief. Accordingly, we will proceed to decide the merits of this appeal. *First Capitol Mortgage Corp.*, 63 Ill. 2d at 133.

¶ 24                              A. Substantial Performance

¶ 25    We first address defendant's claim that the trial court erred in finding that the manner in which plaintiff carried out its obligations under the contract constituted substantial performance in a workman-like manner. Defendant posits that the roofing system plaintiff installed "will fail." Moreover, relying principally upon *Kusy v. Johnson*, 41 Ill. App. 3d 763 (1976), defendant contends that "there can never be substantial performance," where, as here, plaintiff "provided the specifications of the contract and then failed to execute the contract per those specifications."

¶ 26    In Illinois, the long-standing rule in building-contract cases is that a contractor is not required to perform perfectly. *Evans & Associates, Inc. v. Dyer*, 246 Ill. App. 3d 231, 239 (1993). Instead, the contractor is held to a duty of substantial performance in a workman-like manner. *Meyers v. Woods*, 374 Ill. App. 3d 440, 453 (2007); *Evans & Associates, Inc.*, 246 Ill. App. 3d at 239; *Mayfield v. Swafford*, 106 Ill. App. 3d 610, 612 (1982). What constitutes substantial performance is difficult to define. *Folk v. Central National Bank & Trust Co.*, 210 Ill. App. 3d 43, 46 (1990). However, our supreme court has explained the concept as follows:

" 'Substantial performance of a contract means performance in all the essential elements necessary to the accomplishment of the purpose of a contract. [Citation.] "Substantial" means in substance; in the main; essential, including material or essential parts. [Citation.] It has been said *** that "in building contracts a literal compliance with the specifications is not necessary to a recovery by the contractor. A substantial performance in good faith is sufficient." ' " *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.*, 115 Ill. 2d 119, 126-27 (1986) (quoting *People ex rel. Peterson v. Omen*, 290 Ill. 59, 65-66 (1919)).

See also *Folk*, 210 Ill. App. 3d at 46 (noting substantial performance is established by "an honest and faithful performance of the contract in its material and substantial parts, with no willful departure from, or omission of, the essential elements of the contract); *Watson Lumber Co. v. Mouser*, 30 Ill. App. 3d 100, 105 (1975) (providing that the "pristine qualities" of the doctrine of substantial performance are substantial performance of the work required by the contract and a good faith performance of the essential points of the contract). Thus, a construction contract may be substantially performed even though there may be some omissions or deviations from the contract or some defects in the material workmanship when they are not a result of bad faith, do not impair the structure as a whole, and are remediable without materially damaging other parts of the structure. *Doornbos Heating & Air Conditioning, Inc. v. James D. Schlenker, M.D., S.C.*, 403 Ill. App. 3d 468, 483 (2010). A buyer who receives substantial performance in a workman-like manner from a builder must pay the contract price less a credit for deficiencies existing in what the buyer received as compared to what strict performance would have provided. *Evans & Associates, Inc.*, 246 Ill. App. 3d at 239; *Mayfield*, 106 Ill. App. 3d at 612.

¶ 27 " 'In substantial performance cases, the burden is on the contractor to establish the elements necessary to substantial performance recovery and, also, to show the amount [the contractor] should recover.' " *Evans & Associates, Inc.*, 246 Ill. App. 3d at 239 (quoting *Delta Construction, Inc. v. Dressler*, 64 Ill. App. 3d 867, 871 (1978)). Whether there has been substantial performance of a contract in a workman-like manner is a question of fact. *W.E. Erickson Construction, Inc.*, 115 Ill. 2d at 126-27; *Evans & Associates, Inc.*, 246 Ill. App. 3d at 240; see also *Folk*, 210 Ill. App. 3d at 46-47 (noting that what constitutes substantial performance depends on the relevant facts of each case). With respect to factual matters, it is the function of the trier of fact—here the trial court—to assess the credibility of the witnesses, resolve conflicts in the evidence, and assign weight to be accorded the evidence. *Career Concepts, Inc. v. Synergy, Inc.*, 372 Ill. App. 3d 395, 405 (2007). A reviewing court will not disturb a trial court's factual findings unless they are against the manifest weight of the evidence. *Danada Square, LLC v. KFC National Management Co.*, 392 Ill. App. 3d 598, 608 (2009); see also *Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 177 (2004) (noting that rulings following a bench trial are reviewed under the manifest weight standard of review).[2] A factual finding is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent or when findings appear to be arbitrary, unreasonable, or not based on the evidence. *Fantino v. Lenders Title & Guaranty Co.*, 303 Ill. App. 3d 204, 206 (1999).

---

[2] Defendant, citing *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 837-38 (2002), advocates for the application of a *de novo* standard of review on this issue. However, *O'Shield* was an appeal from the denial of a motion to reconsider an order granting summary judgment. Given the distinct procedural postures of *O'Shield* and the present case, we find defendant's invitation for *de novo* review misplaced.

¶ 28    In this case, defendant's roof sustained hail damage. The purpose of the contract was to provide defendant with a new roof. The overwhelming evidence presented at trial establishes that this purpose was achieved. Jacobsen, Moore, and Vecchio testified to the actions they took to order the supplies for the project and install the roof. Defendant acknowledged, albeit begrudgingly, that plaintiff installed a roof on her home. The Winnebago County building inspector testified that defendant's house passed inspection. Although defendant claims that the roofing system will fail, she presented no evidence that, in the two years between completion of the roof and the trial, the roof had leaked or sustained any other failure indicative of poor workmanship.

¶ 29    Admittedly, the color and type of the new shingle were not the same as the old shingle and plaintiff reused certain materials instead of replacing them. But, as noted above, the doctrine of substantial performance allows for minor deviations. See *Doornbos Heating & Air Conditioning, Inc., S.C.*, 403 Ill. App. 3d at 483. Here, the trial court compared the characteristics of the old and new shingle and found the differences "slight and inconsequential." Moreover, the trial court noted that there was competing testimony regarding building code requirements, industry customs, and best practices, including whether certain materials should be reused. The trial court resolved this dispute in plaintiff's favor. Given the deference afforded the trial court's factual findings, we cannot say that these determinations were against the manifest weight of the evidence. *Career Concepts, Inc.*, 372 Ill. App. 3d at 405. There was also evidence that plaintiff did not perform certain aspects of the contract. For instance, there was a lack of ice and water shield at the far back slope of the roof and plaintiff failed to perform fascia work. However, these omissions were remediable without materially damaging other parts of the roof. In this regard, Vecchio testified that the shortage of ice and water shield could be rectified by removing a small portion of the roof's shingles, applying the ice and water shield, and relaying the shingles. Similarly, Vecchio

indicated that the fascia work can be completed after the roof is installed. He also offered an explanation why the fascia work was not completed, *i.e.*, defendant had prohibited plaintiff from doing so once the payment dispute arose. In short, as the trial court found, defendant received "a fully functional roof, albeit with shortcomings and deficiencies." The purpose of the contract having been fulfilled, we conclude that the trial court's finding that the manner in which plaintiff carried out its obligations under the contract constituted substantial performance in a workman-like manner was not against the manifest weight of the evidence.

¶ 30　　In so holding, we find defendant's reliance on *Kusy* unpersuasive. The *Kusy* court refused to accept "the contention that a total failure on the part of a building contractor to comply with one of the requirements of written specifications he himself supplied, can in any circumstances, be justly deemed a substantial performance." *Kusy*, 41 Ill. App. 3d at 766. However, the court determined the measure of damages in such cases is "the reasonable cost of correcting that default." That is exactly what the trial court did here—it reduced the contract price by the cost of installing the additional ice and water shield and other work not performed. As such, defendant's reliance on *Kusy* does not mandate reversal.

¶ 31　　　　　　　　　　　B. Contract Ambiguity

¶ 32　　Defendant also argues that the contract at issue contained ambiguities and that such ambiguities must be construed against plaintiff as the drafter of the contract. We have no qualm with the proposition that an ambiguous contract will be construed against the drafter. See *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). However, defendant did not present this argument to the trial court until oral argument on her motion to reconsider. Arguments raised for the first time in a motion to reconsider in the trial court are forfeited on appeal. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36; see also *Holzer v. Motorola Lighting, Inc.*,

295 Ill. App. 3d 963, 978 (1998) (holding that a party may not raise a legal theory for the first time in a motion to reconsider). Moreover, defendant does not adequately develop this issue. Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) requires the appellant's brief to include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." The failure to develop an argument, cite persuasive and relevant authority, or present a well-reasoned argument violates Rule 341(h)(7) and results in forfeiture of that argument. *Doherty v. Country Faire Conversion, LLC*, 2020 IL App (1st) 192385, ¶ 36; *Vasell v. Presence Saint Francis Hospital*, 2018 IL App (1st) 163102, ¶ 66; *In re Marriage of Woodrum*, 2018 IL App (3d) 170369, ¶ 63. Here, defendant merely presents the proposition that an ambiguous contract will be construed against the drafter, cites three authorities for that general proposition, references some provisions of the contract, refers to a pre-arbitration motion *in limine* to allow the admission of parol evidence at the arbitration hearing (which motion was denied) and, without any analysis, declares that the provisions are ambiguous and must be construed against plaintiff. A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument or research. *People v. Patel*, 2020 IL App (2d) 190532, ¶ 37. Given defendant's failure to raise this issue until her motion to reconsider and her failure to adequately develop the issue, we find it forfeited.

¶ 33                              C. Motion to Exclude Witnesses

¶ 34     Next, defendant challenges the trial court's decision to allow Moore to remain in the courtroom despite the motion to exclude witnesses. Sequestration prevents witnesses from altering their testimony based upon the testimony of another. *People v. Dixon*, 23 Ill. 2d 136, 138-39 (1961); *Skelton v. Chicago Transit Authority*, 214 Ill. App. 3d 554, 584 (1991); see also Ill. R.

Evid. 615 (eff. Jan. 1, 2011) ("At the request of a party the court shall order witnesses excluded *so that they cannot hear the testimony of other witnesses*." (Emphasis added.)). However, a defendant has no absolute right to have witnesses excluded. *People v. Mack*, 25 Ill. 2d 416, 422 (1962). Rather, it is within the sound discretion of the trial court whether to exclude witnesses from the courtroom (*People v. Adams*, 41 Ill. 2d 98, 100-01 (1968); *In re J.E.*, 285 Ill. App. 3d 965, 979 (1996); *Harrisburg Community Unit School District No. 3 v. Steapleton*, 195 Ill. App. 3d 1020, 1023 (1990)), and a reviewing court will not overturn such a decision absent an abuse of discretion (*In re C.P.*, 141 Ill. App. 3d 1018, 1022 (1986)). An abuse of discretion occurs when a ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would agree with the position taken by the trial court. *In re Estate of McDonald*, 2021 IL App (2d) 191113, ¶ 62; *In re M.W.*, 2013 IL App (1st) 103334, ¶ 23.

¶ 35    Here, the trial court allowed Moore to remain in the courtroom based on the representation of plaintiff's counsel that Moore was an owner of plaintiff. Although defendant disputed whether Moore was an owner of the company, she presented no evidence to the contrary. Further, while defendant later pointed out that Moore was not an owner of plaintiff at the time the contract at issue was executed, the court ruled that it would allow Moore to remain in the courtroom because he was an owner at the time of the trial. Having proffered cogent reasons for allowing Moore to remain in the courtroom, we cannot say that the trial court's ruling was arbitrary, fanciful, or unreasonable or that no reasonable person would agree with the trial court's decision. As such, we decline to overturn the trial court's decision to allow Moore to remain in the courtroom.

¶ 36    Nevertheless, defendant insists that that she was prejudiced by the trial court's decision to allow Moore to remain in the courtroom because "Moore's testimony affected the evidence elicited from Jacobsen and thereby rehabilitated, to a degree, Jacobsen's admissions." As such, defendant

contends that Moore's testimony should have be stricken from the record. The burden of proof is on the party alleging error to show prejudice resulting from the trial court's decision to allow a witness to testify. *People v. Wiatr*, 119 Ill. App. 3d 468, 473 (1983). Defendant fails to carry her burden here. Other than the vague statement quoted above, defendant fails to explain how Moore's testimony prejudiced her, and she fails to cite to any relevant authority in support of her position. As noted previously, the failure to develop any meaningful argument or cite any relevant authority results in forfeiture of an issue on appeal. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Doherty*, 2020 IL App (1st) 192385, ¶ 36; *Vasell*, 2018 IL App (1st) 163102, ¶ 66; *In re Marriage of Woodrum*, 2018 IL App (3d) 170369, ¶ 63. Forfeiture aside, we do not find any evidence that Moore altered his testimony to either conform his testimony to that of Jacobsen or rehabilitate Jacobsen's testimony. In this regard, we observe that, for the most part, the substance of Moore's and Jacobsen's testimony did not overlap. Jacobsen's testimony centered on the circumstances that brought him to defendant's residence, the signing of the contract, the work performed on defendant's roof, and his efforts to obtain payment from defendant. In contrast, Moore's testimony focused on his efforts to order materials and schedule labor for defendant's project, the type of shingles ordered for defendant's project, the permitting process, and whether it was necessary to detach the gutters to perform certain work. Given this record, we reject defendant's claim that she was prejudiced by the trial court's decision to allow Moore to remain in the courtroom despite the motion to exclude witnesses.

¶ 37                                     D. Fraud Claims

¶ 38       Finally, defendant argues that plaintiff's "non-performance of critical aspects of the contract" constitute fraud in the inducement and a violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act).

¶ 39    Initially, we note that although defendant's amended countercomplaint raised claims of statutory fraud, it did not allege fraud in the inducement, which is a form of common-law fraud. *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15. "It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). Moreover, although defendant did raise this claim in her motion for reconsideration, arguments raised for the first time in a motion for reconsideration in the trial court are forfeited on appeal. *Evanston Insurance Co.*, 2014 IL 114271, ¶ 36; *Holzer*, 295 Ill. App. 3d at 978. For these reasons, we decline to address on appeal the merits of defendant's claim of fraud in the inducement.

¶ 40    Defendant also claims that plaintiff's performance of the contract constituted a violation of the Home Repair and Remodeling Act and, as a consequence, the Consumer Fraud Act. In this regard, defendant alleges that plaintiff "tendered a contract containing requirements and at the time of the execution, [plaintiff] knew that they would not be fulfilling those requirements." Defendant further alleges that she was damaged thereby.

¶ 41    The elements of a cause of action under the Consumer Fraud Act are: (1) a deceptive act or practice by the defendant; (2) the intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of trade or commerce. *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 311-12 (2000). In addition, the party alleging a violation of the Consumer Fraud Act must also prove that the deception caused his injury. *Zankle*, 311 Ill. App. 3d at 312. The applicable standard of review of a circuit court's judgment following a bench trial is whether the judgment is against the manifest weight of the evidence. *Dargis*, 354 Ill. App. 3d at 177. Similarly, the trial court's determination as to whether the plaintiff has proven the elements of a claim under the Consumer Fraud Act is reviewed under the manifest-weight-of-the-evidence standard. *Pack v.*

*Maslikiewicz*, 2019 IL App (1st) 182447, ¶ 113; *Bell v. Ring*, 2018 IL App (3d) 170649, ¶ 12; *Longo Realty v. Menard, Inc.*, 2016 IL App (1st) 151231, ¶ 27. A judgment or finding is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent or when the judgment is arbitrary, unreasonable, or not based on the evidence. *Dargis*, 354 Ill. App. 3d at 177; *Fantino*, 303 Ill. App. 3d at 206.

¶ 42    Defendant asserts a violation of the Consumer Fraud Act in that plaintiff tendered a contract "containing requirements and at the time of the execution, [plaintiff] knew that they would not be fulfilling those requirements." As the trial court noted, while plaintiff failed to provide work that they contracted for, a deceptive act or practice under the Consumer Fraud Act involves more than the mere fact that a party promised something and failed to do it. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 169 (2005); *Zankle*, 311 Ill. App. 3d at 312. In *Zankle*, for instance, the client alleged that the fact finder could infer that a landscaping company engaged in misrepresentations in that it falsely told him that it would finish a project by a date certain, use specialized equipment, fertilize the client's lawn twice, and install the lawn "in a workmanlike manner." The trial court granted judgment in favor of the landscaping company. This court affirmed, remarking that what the client "calls 'consumer fraud' or 'deception' is simply [the landscaping company's] failure to fulfill [its] contractual obligations." *Zankle*, 311 Ill. App. 3d at 312. The court further explained that if it were to accept the "assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action."

¶ 43    In this case, the trial court found that plaintiff failed to do everything it promised under the parties' contract. Nevertheless, the court found that defendant received a fully functional roof, albeit one with "shortcomings and deficiencies." The court reduced the contract price for those

deficiencies. Moreover, defendant does not direct us to any evidence in support of her allegation that, at the time of the execution of the contract, plaintiff "knew that they would not be fulfilling [certain] requirements" of the contract. Indeed, as the trial court pointed out, it received competing testimony from plaintiff's witnesses and Paris regarding building code requirements, industry customs, and best practices, including the appropriate amount of ice and water shield needed and whether certain materials may be reused or must be replaced. In light of this record, we cannot say that the trial court's finding that plaintiff failed to prove a cause of action for fraud was against the manifest weight of the evidence.

¶ 44                                    III. CONCLUSION

¶ 45     For the reasons stated, we affirm the judgment of the circuit court of Boone County.

¶ 46     Affirmed.